595 So.2d 16 (1992)
Charlie THOMPSON, Appellant,
v.
STATE of Florida, Appellee.
No. 76147.
Supreme Court of Florida.
January 30, 1992.
Rehearing Denied March 26, 1992.
James Marion Moorman, Public Defender and Stephen Krosschell, Assistant Public Defender, Tenth Judicial Circuit, Bartow, for appellant.
Robert A. Butterworth, Atty. Gen. and Robert J. Landry, Asst. Atty. Gen., Tampa, for appellee.
BARKETT, Judge.
Charlie Thompson appeals from convictions for first-degree murder and related offenses and sentences, including the death penalty.[1]
Thompson's 1987 convictions for two counts of kidnapping and two counts of first-degree murder were previously reversed and remanded for a new trial by this Court finding error in the prosecutor's use of peremptory challenges to exclude blacks from the jury and the introduction of a portion of Thompson's confession after an equivocal request for counsel. Thompson v. State, 548 So.2d 198 (Fla. 1989). The facts of the case are fully set forth in our previous opinion.
Briefly stated, Thompson was a grounds keeper and gravedigger for the Myrtle Hill Cemetery in Tampa. On August 27, 1986, Thompson confronted the bookkeeper, William Swack, and an assistant, Nancy Walker, over the last $150 of a worker's compensation claim that Thompson alleged was owed him by the cemetery. After Swack mistakenly wrote Thompson a check for $1500, a fight erupted. Thompson forced Swack, at gunpoint, to drive him and Walker to a nearby park where he later killed them. Swack was stabbed several times and then shot; Walker died of a bullet wound to the back of the head. Evidence indicated that a watch and other jewelry may have been removed from Swack's body. Police arrested Thompson on August 29, 1986, after learning that Thompson had sold a watch and a ring to a man and a woman and had attempted unsuccessfully to cash the $1500 check.
*17 On remand, a jury again found Thompson guilty and recommended death by a vote of seven to five on both murder counts. The trial judge imposed two death sentences and two consecutive life sentences for the kidnappings and a consecutive fifteen-year term of imprisonment for a sexual battery for which Thompson had been on probation.
Thompson raises thirteen issues on appeal. We confine our review to the one issue dispositive of this case.
The detective who interrogated Thompson advised him of his Miranda[2] rights by reading from a "Consent to be Interviewed" form as follows:[3]
I understand that I need not consent to being interviewed nor am I required to make any further statement whatsoever; that I have the right to remain silent and not answer any questions asked of me relative to this crime. I further understand that if I do make a statement or answer any questions that said statement, whether written or oral, could and will be used against me if I am prosecuted for this offense. I further understand that prior to or during this interview that I have the right to have an attorney present. I further understand that if I am unable to hire an attorney and I desire to consult with an attorney or have one present during this interview that I may do so and this interview will terminate. I further understand that at any time that I desire I can have this interview stopped.
(Emphasis added.)
The State argues that this version of Miranda was sufficient to advise Thompson of his rights. The State's position is that "the gist of the Miranda warnings were provided and it is not essential that the accused be told that the ultimate cost [of a lawyer] will be borne by the state or the county." We disagree with the State's interpretation of Miranda and the requirements of the Florida Declaration of Rights.
In our recent opinion in Traylor v. State, 596 So.2d 957 (Fla. 1992), we summarized the procedural safeguards required by the Florida Constitution to ensure that the privilege against self-incrimination is not jeopardized during police questioning:
[T]he Self-Incrimination Clause of Article I, Section 9, Florida Constitution, requires that prior to custodial interrogation in Florida suspects must be told that they have a right to remain silent, that anything they say will be used against them in court, that they have a right to a lawyer's help, and that if they cannot pay for a lawyer one will be appointed to help them.

Id. at 966 (footnote omitted) (emphasis added); see Miranda v. Arizona, 384 U.S. 436, 478-79, 86 S.Ct. 1602, 1629-30, 16 L.Ed.2d 694 (1966).
Of course, neither Florida nor federal courts have required a "talismanic incantation" of these rights. See, e.g., State v. Delgado-Armenta, 429 So.2d 328, 329-31 (Fla.3d DCA 1983); California v. Prysock, 453 U.S. 355, 359, 101 S.Ct. 2806, 2809, 69 L.Ed.2d 696 (1981). Instead, all that is necessary is that the accused be "adequately informed" of the Miranda warnings or their equivalent. See, e.g., Delgado-Armenta; Prysock.
Thus, while the accused need not be told in the exact language of Miranda that "if he cannot afford an attorney one will be appointed for him prior to any questioning if he so desires," the police must somehow communicate to the accused the basic idea of the right to consult a free attorney before being questioned. Here, even if we ignore that Thompson is borderline mentally retarded, we doubt that persons of average intelligence and verbal skills would have been able to glean from the statement read to Thompson that they were entitled to a free lawyer prior to questioning. Indeed, Detective Childers admitted at the suppression hearing that the warning did *18 not advise Thompson of his right to have a lawyer present at no cost.[4]
Indicative of the inadequacy of the Miranda warnings in this case was the equivocal statement made by Thompson that he wanted a lawyer but could not afford one. As this Court noted in the first Thompson opinion, sometime during the interrogation, the following relevant exchange occurred between Thompson and the police:
DETECTIVE CHILDERS: Did you understand your rights?
THE DEFENDANT: Yeah.
DETECTIVE CHILDERS: Did you at any time request an attorney?

THE DEFENDANT: Yeah, but I don't have the money to pay an attorney.

DETECTIVE CHILDERS: You never told us that you wanted an attorney, did you?
THE DEFENDANT: No.
DETECTIVE CHILDERS: Okay. What you're saying right now is because Charlie Thompson wants to say it, isn't that correct?
THE DEFENDANT: Yes.
(Emphasis added.) This exchange illustrates clearly that Thompson did not understand his right to consult with a lawyer free of charge.
As we said in Traylor, to insure that confessions are freely given, article I, section 9 of the Florida Constitution, requires that, prior to questioning, the indigent accused be advised of and given the opportunity to consult with a court-appointed lawyer. The record is clear that Thompson did not understand this right, and it is mere speculation whether he would have waived it had he understood.
In Caso v. State, 524 So.2d 422, 425 (Fla.), cert. denied, 488 U.S. 870, 109 S.Ct. 178, 102 L.Ed.2d 147 (1988), this Court held that "the failure to advise a person in custody of the right to appointed counsel if indigent renders the custodial statements inadmissible in the prosecution's case-in-chief." Consequently, because Thompson's statements were procured absent the proper warnings required by article I, section 9 of the Florida Constitution, we find his confession was improperly admitted in evidence.
We recognize, of course, that the erroneous admission of statements obtained in violation of Miranda is subject to harmless error analysis. See Caso; Kight v. State, 512 So.2d 922, 926 (Fla. 1987), cert. denied, 485 U.S. 929, 108 S.Ct. 1100, 99 L.Ed.2d 262 (1988). Nevertheless, we find the admission of Thompson's confession in this case constituted reversible error. We cannot state, beyond a reasonable doubt, that the impermissible admission of the confession did not affect the jury's verdict. See Caso; State v. DiGuilio, 491 So.2d 1129, 1138 (Fla. 1986).
Accordingly, we reverse Thompson's convictions and remand for a new trial consistent with this opinion.
It is so ordered.
SHAW, C.J., and OVERTON, McDONALD, GRIMES, KOGAN and HARDING, JJ., concur.
NOTES
[1] We have jurisdiction pursuant to article V, section 3(b)(1) of the Florida Constitution.
[2] Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).
[3] The detective was reading from Tampa Police Department Form 310, printed in December 1984.
[4] Thompson did not argue the inadequacy of the Miranda warnings in his 1989 appeal because the deficiency in the warnings had not been presented at the first trial. Detective Childers testified at the first trial that he read Thompson the following statement of Miranda rights: "I further understand that prior to or during this interview that I have a right to an attorney present and if I can not afford one, one will be appointed to me at no cost" (emphasis added). However, at a suppression hearing held in connection with the second trial, Detective Childers admitted that his previous testimony was in error and that he did not tell Thompson he had the right to a lawyer at no cost. Although it is not entirely clear from the record, Detective Childers apparently was relying on the wording of a different Miranda form when he testified at the first hearing, and it was only at the second hearing that defense counsel brought out the insufficiency in the Miranda warnings that were actually read to Thompson. Clearly, this omission constitutes a material change in the evidence not previously addressed by this Court.