773 So.2d 34 (2000)
Henry Perry SIRECI, Appellant,
v.
STATE of Florida, Appellee.
No. SC95116.
Supreme Court of Florida.
September 7, 2000.
Rehearing Denied November 14, 2000.
*37 Julius J. Aulisio, Assistant CCRC, Capital Collateral Regional CounselMiddle, Tampa, Florida, for Appellant.
Robert A. Butterworth, Attorney General, and Scott A. Browne, Assistant Attorney General, Tampa, Florida, for Appellee.
PER CURIAM.
Henry Perry Sireci appeals the trial court's summary denial of his motion for postconviction relief filed pursuant to Florida Rule of Criminal Procedure 3.850.[1] We have jurisdiction. See Art. V, § 3(b)(1), Fla. Const. For the reasons detailed below, we affirm the trial court's order denying postconviction relief.

PROCEDURAL HISTORY
In October 1976, Sireci was convicted and sentenced to death for the first-degree murder of Howard Poteet. The underlying facts and the evidence presented at trial are set forth in great detail in Sireci v. State, 399 So.2d 964 (Fla.1981), cert. denied 456 U.S. 984, 102 S.Ct. 2257, 72 L.Ed.2d 862 (1982), wherein we affirmed both his conviction and sentence.[2]
*38 Thereafter, Sireci filed his first motion for postconviction relief pursuant to rule 3.850.[3] The motion was denied. Upon review, we affirmed the denial of that motion. See Sireci v. State, 469 So.2d 119 (Fla.1985), cert. denied, 478 U.S. 1010, 106 S.Ct. 3308, 92 L.Ed.2d 721 (1986). On September 19, 1986, the governor signed a death warrant. Sireci then filed a second 3.850 motion. The circuit court entered an order granting Sireci's request for an evidentiary hearing and application for stay of execution. The State unsuccessfully appealed. See State v. Sireci, 502 So.2d 1221 (Fla.1987).[4] After the evidentiary hearing, the trial court ordered a new sentencing hearing on the ground that two court-appointed psychiatrists had conducted inadequate mental health evaluations at the time of the original guilt and penalty phase proceedings. That order was affirmed by this Court. See State v. Sireci, 536 So.2d 231 (Fla.1988).
Upon resentencing, the jury again recommended,[5] and the circuit court imposed, the death penalty.[6] Sireci filed a direct *39 appeal of the newly imposed death sentence.[7] We, once again, affirmed the imposition of the death penalty. See Sireci v. State, 587 So.2d 450 (Fla.1991), cert. denied, 503 U.S. 946, 112 S.Ct. 1500, 117 L.Ed.2d 639 (1992).
In June 1993, Sireci filed the instant 3.850 motion for postconviction relief. On January 21, 1999, after several amended versions of the motion had been filed, the trial judge conducted a Huff[8] hearing, and upon finding no basis to conduct an evidentiary hearing, he summarily denied all of the thirty-three claims raised in Sireci's 3.850 motion. Sireci now seeks review of the summary denial of twenty-nine of those claims.[9]

ANALYSIS
At the outset, we dispose of several claims because they are procedurally *40 barred,[10] facially or legally insufficient,[11] not cognizable in postconviction proceedings,[12] *41 or without merit.[13] We now turn to address the remainder of the claims.[14]

Brady Violations[15]
Sireci alleges that the State, in violation of Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), withheld the following evidence: (1) a property receipt for a denim jacket recovered from his girlfriend, Barbara Perkins, by the Las Vegas Police Department; (2) evidence which would have been used to impeach Perkins; and (3) evidence which would have been used to impeach Harvey Woodall, a cellmate.
The United States Supreme Court, in Strickler v. Greene, 527 U.S. 263, 281-282, 119 S.Ct. 1936, 144 L.Ed.2d 286 (1999), recently announced the three requirements that a defendant must establish in order to successfully assert a Brady violation:
The evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that *42 evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued.
The Court further explained that prejudice is measured by determining "whether `the favorable evidence could reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict.'" Id. at 290, 119 S.Ct. 1936 (quoting Kyles v. Whitley, 514 U.S. 419, 435, 115 S.Ct. 1555, 131 L.Ed.2d 490 (1995)). In applying these elements, the evidence must be considered in the context of the entire record. See State v. Riechmann, 25 Fla. L. Weekly S163, ___ So.2d ___, 2000 WL 205094 (Fla. Feb. 24, 2000); Haliburton v. Singletary, 691 So.2d 466, 470 (Fla.1997).

1. Property Receipt
The State argued at trial that Sireci owned two identical denim jackets. According to the State, one of these jackets was stained with the victim's blood and was recovered in an abandoned motel room near the scene of the crime. The second jacket, the State suggested, was seized by the Las Vegas Police Department from Barbara Perkins when she was arrested in Nevada. Both of these jackets were introduced at trial.
Sireci now claims that the State withheld a property receipt, dated February 12, 1976, from the Orange County Sheriffs Department. According to Sireci, the property receipt demonstrates that both of his jackets were seized from Perkins at the time she was arrested in Las Vegas and, therefore, neither could have been the one found in the motel room. Contrary to Sireci's assertions, however, the property receipt only indicates that "one blue denim jacket" was transferred from the Las Vegas Police Department to the Orange County Sheriff's Office. The receipt in no way demonstrates that two jackets were seized from Barbara Perkins. in Las Vegas. Thus, we find that Sireci's claim as to the property receipt fails to establish a Brady violation.

2. Impeachment of Barbara Perkins
Sireci also alleges that the State withheld evidence that, contrary to Perkins' testimony at the resentencing that Sireci stole only $30 from a convenience store several days before the Poteet murder, he in fact stole $400, cigarettes, and wine. This contradiction, he argues, shows that her testimony lacked credibility.
First, we clarify that Perkins did not testify that Sireci took $30 from the convenience store. Her testimony at the resentencing was that "it seemed like a lot, about fifty or sixty, or more." Second, and of greater importance, even assuming that this evidence would have been used to impeach Perkins, we cannot logically conclude that showing a lack of credibility in her testimony at the resentencing on an entirely unrelated crime can undermine confidence in the verdict of guilt entered at his trial for Mr. Poteet's murder.

3. Impeachment of Harvey Woodall
Sireci argues that the State withheld information contained in a statement by Woodall given to the police which would have been used to impeach Woodall's testimony at trial. In this statement, Woodall states that Sireci told him he was wearing a green sweatshirt at the time of the murder, thus undermining the State's theory that he wore a denim jacket. The jacket found in the nearby abandoned motel played an important role in the guilt phase. However, it seems somewhat of a stretch to refer to it, as appellant does, as the "centerpiece" of the State's case.
Specifically, and as pointed out by the trial court below, at least four different people testified at trial to conversations with Sireci in which he confessed to the murder and robbery of Mr. Poteet. An independent review of the record indicates that, in total, seven different people testified that appellant confessed to them that *43 he had murdered Howard Poteet.[16] Those confessions were all consistent, detailed accounts of the murder. Thus, we find that there is no reasonable probability that this evidence could "put [this] whole case in such a different light as to undermine confidence in the verdict." Strickler (quoting Kyles, 514 U.S. at 435, 115 S.Ct. 1555).
Sireci also maintains that the State provided favors to Woodall in exchange for his testimony. Namely, Sireci suggests the possibility that the state attorney responsible for the guilt phase of the proceedings paid the hotel bill for the accommodations used by Woodall during trial, which included charges for alcoholic beverages. This claim is entirely without merit. Appellant argues that "[i]f the State Attorney paid this bill for Mr. Woodall, this information would have undermined his credibility as a witness." (Emphasis supplied.) Appellant is, however, unable to tie this allegation to any evidence. Moreover, even if this allegation were true, which appellant does not suggest given his use of the word "if," and even if Woodall's entire credibility would have been diminished by this fact, the State still introduced six other confessions. Thus, we again find no reasonable probability that this information, if in fact accurate, would undermine our confidence in the verdict.

Newly Discovered Evidence[17]
Sireci argues that DNA testing would be able to provide better identification with regard to hairs found in the towels at the motel which had a role in the proceedings. This, according to Sireci, would demonstrate that the involvement of Barbara Perkins in Mr. Poteet's murder was more than she led the jury to believe.[18]
This Court has held that to obtain relief based on a newly discovered evidence claim a defendant must satisfy the following two requirements:
First, in order to be considered newly discovered, the evidence "must have been unknown by the trial court, by the party, or by counsel at the time of trial, and it must appear that defendant or his counsel could not have known [of it] by use of due diligence."
Second, the newly discovered evidence must be of such nature that it would probably produce an acquittal on retrial....
In considering the second prong, the trial court should initially consider whether the evidence would have been admissible at trial or whether there would have been any evidentiary bars to admissibility.... The trial court should further consider the materiality and relevance of the evidence and any inconsistencies in the newly discovered evidence.
Jones v. State, 709 So.2d 512, 521 (Fla. 1998) (citations omitted).
DNA typing was recognized in this state as a valid test as early as 1988. See Zeigler v. State, 654 So.2d 1162, 1164 (Fla.1995)(citing Andrews v. State, 533 So.2d 841 (Fla. 5th DCA 1988)). In Zeigler, we held that the two-year period for filing a 3.850 motion based on newly discovered *44 evidence begins to run on a defendant's postconviction request for DNA testing when the testing method became available. See 654 So.2d at 1164; see also Adams v. State, 543 So.2d 1244 (Fla.1989) (holding that motion for postconviction relief based on newly discovered evidence must be raised within two years of such discovery). The final amended version of Sireci's 3.850 motion was filed in 1997-approximately nine years after DNA testing was recognized in Florida. Thus, this portion of the claim is time-barred.
However, even assuming that this claim were not time-barred, and assuming further that the DNA results would indicate that the hairs in the towels in the abandoned motel room belonged to Perkins, we cannot determine that this evidence would "probably produce an acquittal on retrial." Jones, 709 So.2d at 521. At trial, Perkins admitted to having picked up Sireci at the abandoned motel; thus, it is not difficult to imagine that she might have actually gone inside the room. This evidence, however, in no way exculpates Sireci. Thus, we cannot agree that it would probably produce an acquittal on retrial.

Ineffective Assistance of Counsel
To establish a claim of ineffective assistance of counsel, a defendant must prove two elements:
First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.
Strickland v. Washington, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); see also Rutherford v. State, 727 So.2d 216 (Fla.1998). The Strickland Court added that in establishing prejudice, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." 466 U.S. at 694, 104 S.Ct. 2052.
As claim (20), Sireci argues that he was denied the effective assistance of counsel because his defense attorney failed to move for a change of venue. Specifically, Sireci alleges that the jury was influenced by pretrial publicity, and that counsel's failure to move for a change of venue prejudiced him.
It is not clear from appellant's briefs or 3.850 motion whether he is arguing ineffective assistance of trial counsel at the guilt phase in 1976, or at the re-sentencing in 1990. In any event, Sireci's conviction became final in 1982 after the United States Supreme Court denied certiorari review. See Sireci v. Florida, 456 U.S. 984, 102 S.Ct. 2257, 72 L.Ed.2d 862 (1982). To the extent that Sireci is arguing that defense counsel was ineffective at the guilt phase, this claim is time-barred. See Downs v. State, 740 So.2d 506, 513 (Fla.1999)(recognizing January 1, 1987, as the deadline for seeking postconviction relief for those convictions which became final prior to January 1, 1985); Zeigler v. State, 632 So.2d 48, 50 (Fla.1993)(same). In addition to being time-barred, this claim is also successive given the fact that Sireci previously claimed ineffective assistance of trial counsel (relating to the guilt and penalty phase held in 1976). See Sireci v. State, 469 So.2d 119, 120 (Fla.1985).
As to the possibility that the claim alleges ineffective assistance of counsel at the second penalty phase for failure to move for a change of venue, we affirm the trial court's summary denial. As the trial court noted, the resentencing *45 proceedings were conducted roughly fourteen years after the guilt phase. While the trial attorney at the resentencing noted concern regarding publicity with respect to those jurors who had resided in the area during 1975 and 1976, he also noted that there had been little media attention focused on the resentencing proceedings. Further, during individualized voir dire only two jurors indicated that they might be familiar with the case based on media coverage.[19] Neither of those two jurors were members of the panel that recommended the death penalty. As a further precaution, the full panel was again questioned regarding whether any of them had any knowledge of the case either through media coverage or any other source. None of the jurors indicated familiarity with the case. Thus, we find that the trial court below properly denied an evidentiary hearing on this claim since the allegations contained therein are conclusively refuted by the record.

Inadequate Mental Health Evaluation
A criminal defendant is entitled to expert psychiatric assistance when the State makes his or her mental state relevant to the proceeding. See Ake v. Oklahoma, 470 U.S. 68, 105 S.Ct. 1087, 84 L.Ed.2d 53 (1985). In the present case, Sireci argues that the mental health experts who evaluated him in preparation for his resentencing, and who eventually testified at his penalty phase, failed to conduct a professionally competent evaluation and failed to present their testimony to the jury in a comprehensible manner.
The record indicates that during the resentencing hearing, defense counsel presented the testimony of several experts in psychology and mental health. First, Dr. Dorothy Lewis, a psychiatrist, testified extensively at trial regarding her evaluations and findings as to Sireci's mental state, cognitive abilities, brain damage and evidence of abuse. Second, Dr. Jonathan Pincus, a neurologist, also testified in reference to Sireci's brain damage and birth-related trauma. Moreover, defense counsel also presented evidence of the abuse suffered by Sireci through the testimony of Mark Morrison, a clinical services supervisor at a non-for-profit social service agency that provides treatment services to children who have experienced sexual or physical abuse, and the testimony of Kevin Sullivan, a licensed clinical social worker. A review of the record indicates that these individuals provided a complete picture of Sireci's bleak childhood and mental state. The experts thoroughly explained how Sireci was affected by his abusive childhood and organic brain damage. Contrary to appellant's assertion, we find that this evidence was presented in a clear and comprehensible manner. Because the record conclusively refutes Sireci's claim that he received an incompetent mental health evaluation, we uphold the trial court's summary denial of this claim.

CONCLUSION
In sum, we affirm the summary denial of all claims raised in appellant's motion for postconviction relief.
It is so ordered.
WELLS, C.J., and SHAW, HARDING, ANSTEAD, PARIENTE and LEWIS, JJ., concur.
QUINCE, J., concurs in result only.
NOTES
[1] This is Sireci's initial rule 3.850 motion after the death penalty was imposed at his resentencing in 1990.
[2] Sireci alleged the following on direct appeal: (1) the trial court erred in allowing testimony concerning collateral offenses; (2) the refusal to grant a continuance when an additional witness list was filed on the first day of trial, to strike the testimony of Donald Holtzinger, or grant a mistrial was error; (3) the trial court erred in limiting cross-examination of a key prosecution witness; (4) Sireci was denied due process of law by the introduction of testimony regarding the exercise of his constitutional right to remain silent; (5) the circumstantial evidence was insufficient to establish either premeditation or felony murder; (6) Sireci was denied due process of law by the State's failure to notify him, prior to trial, of the aggravating circumstances it intended to prove; (7) the trial court had no jurisdiction to impose a death sentence because the indictment failed to allege any aggravating circumstances; (8) Sireci's execution would deprive Sireci of life without due process and subject him to cruel and unusual punishment; (9) the aggravating circumstances were not proven beyond a reasonable doubt or were improperly applied; (10) the trial court improperly failed to consider certain mitigating factors; (11) the trial court erred in allowing the prosecution to present evidence of nonstatutory aggravating factors; (12) death was imposed on Sireci on the basis of the Florida Statute which unconstitutionally limited consideration of mitigating factors; (13) the Florida capital sentencing statute was unconstitutional on its face and as applied due to the lack of any standard for weighing the aggravating and mitigating factors; (14) Florida's capital sentencing statute was unconstitutional on its face and as applied because there is no legitimate penological justification for capital punishment; and (15) Sireci was denied his right to a fair cross-section of the community by Florida's exemption, upon request, of mothers with children from service on juries.
[3] The following was alleged in the 3.850 motion: (1) Sireci was denied a fair and individualized capital sentencing determination by the preclusion of evidence of nonstatutory mitigating factors as a result either of the operation of state law or the denial of effective assistance of counsel; (2) Sireci's sentence of death was a product of systematic racial discrimination in capital sentencing; (3) Sireci was denied the effective assistance of counsel and due process of law by his counsel's inability to cross-examine a key State's witness (Donald Holtzinger), and was deprived of due process of law by the State's failure to disclose possible deals made with this key witness (4) Sireci was denied the effective assistance of counsel by his attorney's failure to object to a comment on Sireci's exercise of his right to counsel and to remain silent; (5) the requirement in Florida that the jury be instructed as to all lesser-included offenses, regardless of whether there was evidence to support those lesser offenses, rendered Florida's capital sentencing system, as a whole, unconstitutional.
[4] Consolidated with the State's appeal was Sireci's petition for writ of habeas corpus. In the petition, Sireci's only allegation was that the death penalty is imposed in a racially discriminatory manner. The court dismissed the petition, finding that the proper forum for that claim would be a motion for postconviction relief, and that the same claim had already been raised by Sireci, and rejected by the Court, in his initial motion for postconviction relief. See State v. Sireci, 502 So.2d 1221, 1224 (Fla.1987).
[5] The jury voted for the death penalty by a vote of 11 to 1.
[6] The trial court found the following aggravating factors: (1) the defendant was previously convicted of another capital felony or a felony involving the use of threat of violence (a prior murder and an earlier robbery); (2) the murder was committed during a robbery and for pecuniary gain; (3) the murder was committed for the purpose of avoiding or preventing a lawful arrest by eliminating a witness; (4) the murder was especially heinous, atrocious, or cruel; and (5) the murder was cold, calculated, and premeditated. The court found nonstatutory mitigating evidence relating to Sireci's abusive childhood and brain damage. The court found no statutory mitigating circumstances.
[7] Sireci alleged the following errors: (1) the trial court abused its discretion in refusing to permit Sireci to waive the jury sentencing recommendation; (2) the trial court erred in denying Sireci's motion for mistrial after the prosecutor revealed to the jury that Sireci was on death row and by thereafter preventing Sireci from interviewing the jurors when it became known that the jurors attributed great significance to the prior death sentence; (3) the use of the cold, calculated and premeditated aggravator to justify imposition of the death penalty violated the ex post facto clause because this crime was committed before that aggravator was legislated into existence; (4) the trial court erred in rejecting statutory mitigating factors that were established without contradiction at the penalty phase; (5) because the death penalty recommendation by this jury was unreliable, the death sentence based thereon should have been reversed and the matter remanded for a new penalty phase; (6) section 921.141, Fla. Stat. (1987), was unconstitutional on its face and as applied.
[8] Huff v. State, 622 So.2d 982 (Fla.1993).
[9] Sireci alleges that the trial court erred in summarily dismissing his claims that: (1) Florida's statute setting forth the aggravating circumstances in a capital case is facially vague and overbroad; (2) the jury was improperly instructed on the heinous, atrocious and cruel aggravator; (3) the pecuniary gain aggravator was improperly applied in this case; (4) the jury was improperly instructed on the avoiding arrest aggravator and that aggravator was improperly applied; (5) the jury was improperly instructed on the cold, calculated and premeditated aggravator, and that aggravator was improperly applied in this case; (6) the jury's death recommendation was tainted by consideration of invalid aggravators; (7) the prior conviction introduced to support the prior conviction of a violent felony aggravator was unconstitutionally obtained and inadmissible to support this aggravator; (8) the sentencing judge used the same evidence to support more than one aggravator; (9) the aggravator of murder in the course of a felony is an unconstitutional automatic aggravator; (10) the use of the CCP aggravator in this case violates federal and state ex post facto clauses; (11) the sentencing judge failed to find the existence of nonstatutory mitigators established by the evidence (physically and sexually abusive childhood, borderline intelligence, vulnerability to manipulation, head trauma, and organic brain damage); (12) the sentencing judge failed to find the existence of statutory mitigators which were supported by the evidence (crime was committed while under the influence of extreme mental or emotional disturbance; crime was committed while under the extreme duress or substantial domination of another person; crime was committed while Sireci lacked the capacity to appreciate the criminality of his conduct or while his ability to conform his conduct to the requirements of the law was substantially impaired; Sireci's age at the time of the crime); (13) the jury improperly considered Sireci's lack of remorse; (14) the Florida Supreme Court failed to conduct a meaningful harmless error analysis as to the effect that evidence relating to Sireci's lack of remorse had on the jury's recommendation; (15) the State withheld evidence (i.e., property receipt and evidence which would have been used to impeach witnesses Perkins and Woodall) in violation of Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963); (16) newly discovered evidence (i.e., DNA) indicates that Sireci is innocent; (17) newly discovered evidence (i.e., lab followed improper procedures) indicates that Sireci is innocent; (18) Sireci received ineffective assistance of counsel during the pretrial stages and during the guilt phase; (19) Sireci received ineffective assistance of counsel during the resentencing phase based on counsel's failure to properly present mitigating evidence; (20) Sireci received ineffective assistance of counsel at the resentencing phase based on counsel's failure to move for a change of venue; (21) Sireci appeared before the jury in shackles in violation of his constitutional right; (22) the State has failed to comply with Sireci's public records requests; (23) the trial court erred in not allowing Sireci to waive a jury trial; (24) the prosecutor improperly informed the jury that Sireci had previously been on death row; (25) Sireci was denied an adequate mental health evaluation as required by Ake v. Oklahoma, 470 U.S. 68, 105 S.Ct. 1087, 84 L.Ed.2d 53 (1985); (26) the trial court minimized the jury's role during sentencing in violation of Caldwell v. Mississippi, 472 U.S. 320, 105 S.Ct. 2633, 86 L.Ed.2d 231 (1985); (27) rules prohibiting Sireci from interviewing jurors after their recommendation deprived Sireci of his constitutional rights; (28) death by electrocution constitutes cruel and unusual punishment; (29) Sireci was denied a fundamentally fair trial due to the cumulative effect of the errors which occurred below.
[10] Claims (1), (10), (12), (13), (23), (24) and (27) are procedurally barred because they were raised on direct appeal from the resentence of death and decided adversely to Sireci's position. See Sireci, 587 So.2d at 452-455. To the extent that Sireci uses a different argument to relitigate the same issue, the claims remain procedurally barred. See, e.g., Harvey v. Dugger, 656 So.2d 1253, 1256 (Fla. 1995); Turner v. Dugger, 614 So.2d 1075, 1077 (1992).

Claims (2), (3), (4), (5), (6), (7), (8), (9), (11), (21), (26) are procedurally barred because they should have been raised on direct appeal. See, e.g., Harvey, 656 So.2d at 1256.
[11] Within claims (2), (3), (5), (7), (9), (21), and (26), all of which are procedurally barred because they should have been raised on direct appeal, Sireci seeks to circumvent the procedural bar as to the substantive claims by interjecting conclusory allegations of ineffective assistance of counsel for failure to raise an appropriate objection or otherwise preserve the issue for appellate review. We find these allegations to be legally and facially insufficient to warrant relief under Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), because at no point has Sireci alleged how he was prejudiced by counsel's failure to object or raise the asserted error. See also Kennedy v. State, 547 So.2d 912, 913 (Fla.1989)("A defendant may not simply file a motion for postconviction relief containing conclusory allegations that his or her trial counsel was ineffective and then expect to receive an evidentiary hearing.")

Moreover, the substantive issues raised in claims (2), (3), (9) and (26) are without merit as a matter of law. See, e.g., Hudson v. State, 708 So.2d 256, 262 (Fla.1998)(rejecting argument that the murder in the course of a felony aggravator is an invalid, automatic aggravator); Thompson v. State, 648 So.2d 692, 695 (Fla.1994)(holding that both the pecuniary gain and avoiding arrest factors may be applied in a given case and are not mutually exclusive, thereby negating Sireci's argument that counsel was ineffective in failing to object to the jury being instructed on both of these factors); Hall v. State, 614 So.2d 473, 478 (Fla.1993)(upholding a heinous, atrocious, and cruel instruction nearly identical to the one received by the jury in Sireci's case); Turner v. Dugger, 614 So.2d 1075, 1079 (Fla. 1992) (finding that Caldwell does not control Florida law on capital sentencing); Fotopoulos v. State, 608 So.2d 784, 794 n. 7 (Fla.1992)(rejecting claim that death penalty statute is unconstitutional). Thus, even if Sireci had sufficiently alleged prejudice, counsel could not be deemed deficient for failing to object at trial. See Mendyk v. State, 592 So.2d 1076, 1080 (Fla.1992)("When jury instructions are proper, the failure to object does not constitute a serious and substantial deficiency that is measurably below the standard of competent counsel.")
Likewise, the allegations of ineffective assistance of counsel interjected within claims (7) and (21) are not only insufficiently pled (i.e., Sireci failed to allege prejudice), but also conclusively refuted by the record. That is, while Sireci complains that counsel failed to object to the alleged substantive error, the record demonstrates the exact opposite.
As to claims (18) and (19), appellant's 3.850 motion, much like his briefs to the Court, contains nothing more than a general allegation of ineffective assistance of counsel. Appellant urged the trial court to refer to a newly discovered evidence claim for the factual basis of these two claims. One of the elements which must be established to find that evidence is indeed "newly discovered" is that the evidence could not have been discovered through the exercise of due diligence. This requirement makes it logically inconsistent for a defendant to argue, as Sireci does, that evidence is newly discovered because counsel was ineffective. That is, the evidence could not have been discovered even with the exercise of due diligence; therefore, counsel could not have been ineffective in failing to discover it. Accordingly, we find claims (18) and (19) to be insufficiently pled.
Finally, we find that claim (22), dealing with an alleged violation of chapter 119 of the Florida Statutes was insufficiently presented for review. See Shere v. State, 742 So.2d 215, 218 n. 6 (Fla.1999)(finding that issues raised in appellate brief which contain no argument are deemed abandoned). We further note that out of an abundance of caution, defense counsel was asked during oral arguments whether he wished to comment on this claim, at which point he replied, "Judge, I don't think that is a major issue at this point."
[12] A claim such as Sireci's claim (14), which challenges the sufficiency of this Court's harmless error analysis on direct appeal, may not be appropriately raised in a motion for postconviction relief. See Shere v. State, 742 So.2d 215, 218 n. 7 (Fla.1999)(finding that defendant's claim challenging the sufficiency of this Court's harmless error analysis on direct appeal cannot be raised in a motion for postconviction relief).
[13] In claim (28) Sireci argues that death by electrocution constitutes cruel and unusual punishment. This issue has been decided adversely to Sireci's position. See Provenzano v. Moore, 744 So.2d 413 (Fla.1999)(finding that death by electrocution does not constitute cruel and unusual punishment despite claim that it violates evolving standards of decency).

Sireci also argues in claim (29) that he was denied a fundamentally fair trial due to the cumulative effect of the errors which occurred below. Because we determine that no errors occurred, we necessarily must conclude that this claim is without merit. See Downs v. State, 740 So.2d 506, 509 (Fla.1999)(finding that where allegations of individual error are found without merit, a cumulative error argument based thereon must also fail).
[14] We feel obligated to comment on the voluminous nature of the 3.850 motion filed below and the briefs filed in this Court on behalf of Mr. Sireci. As is evident from this opinion, twenty-four of the twenty-nine claims asserted for review were either procedurally barred, insufficiently pled, improperly raised in a 3.850 motion, or entirely without merit as a matter of law. Defense counsel indicated during oral arguments that many of these issues needed to be raised for purposes of preserving the claim in the event that there is a change in the law which would afford a capital defendant relief. We understand and certainly appreciate defense counsel's valid concern. Notwithstanding, there is no need to unnecessarily burden any court with issues which simply detract focus from arguably meritorious claims. Accordingly, we take this opportunity to suggest that issues which are being raised solely for purposes of preserving an error should be so designated. We will consider the issues preserved for review in the event of a change in the law if counsel so indicates by grouping these claims under an appropriately entitled heading and providing a description of the substance. It is the real concern of any court that attempts to disguise improper arguments may actually conceal meritorious claims.
[15] Appellant argues that the trial court failed to cite to or attach the portions of the record that refute this claim, and that, in relation, the trial judge did not review the transcripts from the original guilt phase. Appellant is correct. However, in Anderson v. State, 627 So.2d 1170, 1171 (Fla.1993), this Court noted that in order to "support summary denial without a hearing, a trial court must either state its rationale in its decision or attach those specific parts of the record that refute each claim presented in the motion." (Emphasis supplied.) In the instant case, while the trial court did not attach portions of the record, it did state its rationale.
[16] Specifically, the following people testified that Sireci admitted killing Mr. Poteet: (1) Barbara Perkinsgirlfriend; (2) Donald Holtzinger cell mate; (3) Peter Sirecibrother; (4) Harvey Woodallcell mate; (5) Bonnie Lee Arnoldfriend; (6) David Wilsonbrother in law; (7) Gary Arbisidetective.
[17] Defense counsel also argued that he discovered information indicating that at the time of Mr. Sireci's arrest and trial, the Sanford Laboratory of the Florida Department of Law Enforcement and the Orange County Sheriff's Department were not following proper scientific procedures for recovering and testing forensic evidence. Appellant, however, fails to identify what evidence he discovered or when it occurred. Thus, we affirm the trial court's conclusion that this claim is insufficiently pled.
[18] To be sure, Sireci is not suggesting that DNA tests which have already been performed have indicated that the hairs found match Perkins'.
[19] Appellant's assertion that at least nine potential jurors indicated a familiarity with the case, and that at least six of those actually sat on the jury, appears to refer to the guilt phase in 1976. As explained above, this claim would be time-barred.