796 So.2d 511 (2001)
Charlie THOMPSON, Appellant,
v.
STATE of Florida, Appellee.
Charlie Thompson, Petitioner,
v.
Michael W. Moore, Respondent.
Nos. SC96641, SC00-473.
Supreme Court of Florida.
September 20, 2001.
*513 Jack Crooks, Assistant CCRC, and Eric Pinkard, Assistant CCRC, Capital Collateral Regional Counsel-Middle, Tampa, FL, for Appellant/Petitioner.
Robert A. Butterworth, Attorney General, and Carol M. Dittmar, Assistant Attorney General, Tampa, FL, for Appellee/Respondent.
PER CURIAM.
Charlie Thompson appeals the trial court's summary denial of his motion for postconviction relief filed pursuant to Florida Rule of Criminal Procedure 3.850. Thompson further petitions this Court for a writ of habeas corpus. We have jurisdiction. See art. V, § 3(b)(1), (9), Fla. Const. For the reasons detailed below, we remand for an evidentiary hearing on Thompson's ineffective assistance of counsel claims which are not rejected herein. In all other *514 respects, we affirm the trial court's summary denial, and decline to grant habeas relief.

PROCEDURAL HISTORY
In 1987, Thompson was convicted and sentenced to death for the first-degree murders of William Russel Swack and Nancy Walker. On direct appeal, we reversed and ordered a new trial based on the prosecutor's use of peremptory challenges to exclude African Americans from the jury, and the introduction of a portion of Thompson's confession after an equivocal request for counsel. See Thompson v. State, 548 So.2d 198 (Fla.1989). Upon retrial, Thompson was again convicted and sentenced to death in 1990. This Court, again, reversed and remanded for a new trial on the basis that, prior to obtaining incriminating statements from the defendant, the officers who advised him of his Miranda[1] rights failed to inform him that he had a right to have an attorney appointed if he could not afford one. See Thompson v. State, 595 So.2d 16 (Fla.1992). At the close of his third trial, Thompson was convicted and sentenced to death.[2] This time, the convictions and death sentences were both affirmed on direct appeal. See Thompson v. State, 648 So.2d 692 (Fla. 1994), cert. denied, 515 U.S. 1125, 115 S.Ct. 2283, 132 L.Ed.2d 286 (1995). The underlying facts and evidence presented at trial were extensively set forth in that opinion. See id. at 693-94.
In March 1997, Thompson filed his first motion for postconviction relief pursuant to Florida Rule of Criminal Procedure 3.850. Two years later, in April 1999, he filed an amended 3.850 motion. After conducting a Huff[3] hearing, the trial court summarily denied all of the claims raised in Thompson's amended postconviction motion. Thompson now appeals the denial of his 3.850 claims,[4] and simultaneously petitions this Court for habeas corpus relief.

ANALYSIS

3.850 Appeal
At the outset, we dispose of the following postconviction claims because they are either procedurally barred, facially or legally insufficient, clearly without merit as a matter of law, or moot.[5] We *515 now turn to address the remainder of Thompson's 3.850 claims, all of which involve allegations of ineffective assistance of counsel. To establish a claim that defense counsel rendered ineffective assistance, a defendant must prove two elements:
First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.
Strickland v. Washington, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); see also Rutherford v. State, 727 So.2d 216 (Fla.1998). The Strickland Court added that in establishing prejudice:

*516 The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.
466 U.S. at 694, 104 S.Ct. 2052. Additionally, and because the Strickland standard requires establishment of both prongs, when a defendant fails to make a showing as to one element, it is not necessary to delve into whether he has made a showing as to the other element. See Strickland, 466 U.S. at 697, 104 S.Ct. 2052 ("[T]here is no reason for a court deciding an ineffective assistance claim ... to address both components of the inquiry if the defendant makes an insufficient showing on one."); Downs v. State, 740 So.2d 506, 518 n. 19 (Fla.1999) (finding no need to address prejudice prong where defendant failed to establish deficient performance element); Kennedy v. State, 547 So.2d 912, 914 (Fla. 1989) (noting that where defendant fails to establish prejudice prong court need not determine whether counsel's performance was deficient).
In this appeal, Thompson presents numerous claims of ineffective assistance of counsel.[6] With respect to three of these claims, we hold that Thompson is entitled to an evidentiary hearing. The claims clearly warranting a hearing are those relating to counsel's performance during jury voir dire (ineffectiveness sub-claim (a)); counsel's failure to investigate the derivation of a male Caucasian hair found on the female victim's body (portion of ineffectiveness sub-claim (b)); and counsel's failure to request a Richardson[7] hearing after it became apparent that the State might have violated a rule of discovery (ineffectiveness sub-claim (j)). We address each of those sub-claims in turn.

1. Jury Voir Dire
With respect to defense counsel's performance during voir dire, Thompson alleges that counsel failed to (1) inquire about possible racial prejudices despite the fact that Thompson was an African American who was accused of murdering a white man and woman; (2) question jurors about their beliefs regarding the credibility of police officers; (3) adequately question the panel about their views on the death penalty; (4) question jurors about their opinions concerning mental health experts and mental health mitigation as it related to the guilt and penalty phases; (5) excuse a juror who indicated that she would have difficulty believing that a defendant who remained silent was innocent.
Because we find that these claims are not conclusively refuted by the record, we remand for an evidentiary hearing. We specifically focus our attention on Thompson's *517 claim that trial counsel was ineffective in failing to challenge juror Wolcott for cause.[8] The record in this case indicates that juror Wolcott had extreme difficulty accepting the notion that a defendant has a right to not testify. Defense counsel did not seek Ms. Wolcott's removal for cause; nor did he exercise a peremptory challenge to excuse her, even though he had not used, and never did use, any of his ten peremptory challenges. Ms. Wolcott eventually served on the jury. Thompson never took the stand.
The State posits that although juror Wolcott was not individually questioned about her ability to follow the law, counsel was not ineffective because juror Wolcott was nevertheless rehabilitated. The State's position that Ms. Wolcott was rehabilitated is based on the fact that the prospective panel, as a whole, acknowledged several times that the case would have to be decided on the strength of the State's evidence, and that the defendant had a fundamental right to not testify.
The court below summarily denied this claim, concluding that even assuming that counsel's performance was deficient, no prejudice resulted; thus, no relief was warranted. The trial court's conclusion that no prejudice was shown seems to be premised on the fact that this Court had already determined on direct appeal that "the evidence was more than sufficient to support Defendant's two convictions for first-degree murder." Order Denying First Amended Motion to Vacate Judgments of Conviction and Sentences with Special Request for Leave to Amend at 11 (citing Thompson, 648 So.2d at 695). We disagree with the trial court's decision to not hold an evidentiary hearing on this claim.
Primarily, the trial court's conclusion is misdirected in this analysis. The issue is not whether the evidence was sufficient to support the convictions;[9] the real issue is whether, as a result of counsel's performance, the panel which made that ultimate determination was composed of jurors who held the fact that Thompson exercised a fundamental constitutional right against him. See, e.g., Hamilton v. State, 547 So.2d 630 (Fla.1989) (finding error, based on conclusion that juror had not been adequately rehabilitated, where juror who indicated difficulty accepting idea that defendant had right to not testify was not excused for cause); see also, e.g., Lowe v. State, 718 So.2d 920 (Fla. 4th DCA 1998); Lazana v. State, 666 So.2d 588 (Fla. 2d DCA 1996); Gibson v. State, 534 So.2d 1231 (Fla. 3d DCA 1988). Notwithstanding this fact, we cannot foreclose the possibility that counsel's failure to challenge juror Wolcott for cause was the product of some reasonable tactical decision. Accordingly, we remand for an evidentiary hearing to permit the trial court to evaluate any evidence as to why, if for any reason, defense counsel did not seek this juror's removal.

*518 2. Male Caucasian Hair
Within his claim relating to the investigation of the crime scene, Thompson faults defense counsel for failing to properly investigate the derivation of a male Caucasian hair found inside the female victim's underpants. Placed in context, the evidence at trial indicated that the male victim was found wearing only his underwear, socks and shoes. The female victim was found fully clothed; however, dirt and debris were present on her back and underneath her undergarments in the buttocks area. From this, the medical examiner concluded that Ms. Walker's back and buttocks had been in contact with the ground in the park where the bodies were found. The State therefore suggested that both victims had been forced to disrobe and that Ms. Walker had been allowed to dress herself again.
There is no indication in the record as to why the male Caucasian hair was not investigated; nor is there any mention of this evidence during the trial. Because the testimony at trial was that the female victim had been undressed at one point while at the crime scene, and because Mr. Thompson is African-American, the presence of a male Caucasian hair in this location on the female victim's body may have been relevant. However, we do not know whether defense counsel was aware that this evidence existed; whether the evidence was tested, but was of no evidentiary value; or whether this evidence was not presented to the jury as a result of counsel's sound tactical decision. In short, without the benefit of an evidentiary hearing, we are left only to speculate as to why this evidence was not pursued by trial counsel or presented to the jury. Therefore, we remand for an evidentiary hearing so that this claim may be explored further.

3. Richardson Hearing
In this claim, Thompson asserts that counsel was ineffective in failing to request a Richardson hearing after it became apparent that the State might have committed a discovery violation. During the guilt phase, the following exchange occurred during the cross examination of Mr. Herman Smith:
Q. [Defense Counsel] But on August 27th, 1986, did you work at the cemetery?
A. Yes, sir. I had my crew working at the office that day.
Q. Was Mr. Thompson working on that day?
A. No. He had quit his job.
Q. Did you see Mr. Thompson at the cemetery?
A. No. Everybody that appeared there know Mr. Thompson because he was working in my crew at the time.
Q. I'm not arguing with you about that, Mr. Smith, and I don't want you to think that I am. Can you just answer this question for me? On August 27th 1986, did you at any point in time while you were working on that day see Charlie Thompson on the grounds of the Myrtle Hill Cemetery?
A. My crew have told me he was at that time. I got to explain myself.
Q. No sir. Just tell me this: Did you, sir, see Thompson on August 27th at the cemetery? Did you see him?
A. No, sir, but my crew did. My crew did.
Q. When did your crew see him?
A. I was the foreman out there this particular day. They was there working at the office when they seen Mr. Thompson go in there and carry Mr. Swack and Ms. Nancy. They said he had a gun in his pocket.
THE COURT: Take the jury out.
*519 Thompson's defense attorney requested a curative instruction, and upon reconsideration, moved for a mistrial. The court declined to grant a mistrial and instead gave the jury a curative instruction. On direct appeal, Thompson argued that the testimony was inadmissible hearsay, non-responsive to the question asked, and that the curative instruction was ineffective. This Court declined to grant relief, reasoning:
Although we can sympathize with the defense attorney's frustration in questioning a less than sophisticated witness, it is apparent from the record that this damaging hearsay response was invited by defense counsel's question. We note that the witness had already stated twice that he himself had not seen Thompson when counsel asked the question, "When did your crew see him?" Furthermore, the defense attorney initially told the trial judge that there was no need for a mistrial and that a curative instruction would suffice. The State did not utilize the hearsay testimony at any point throughout the remainder of the trial, and we specifically note no mention of it in final argument. We find that the trial judge did not err in refusing to grant a mistrial under these circumstances.
Thompson, 648 So.2d at 695.
The issue raised by Thompson in this subclaim, although based on the same incident, is different. Specifically, Thompson asserts that defense counsel was ineffective in failing to request a Richardson hearing once the State admitted that it had been privy to that information a few weeks prior to trial. Pursuant to Richardson v. State, 246 So.2d 771 (Fla.1971):
[W]hen the State violates a discovery rule, the trial court has discretion to determine whether the violation resulted in harm or prejudice to the defendant, but this discretion can be properly exercised only after adequate inquiry into all the surrounding circumstances. In making such an inquiry, the trial judge must first determine whether a discovery violation occurred. If a violation is found, the court must assess whether the State's discovery violation was inadvertent or willful, whether the violation was trivial or substantial, and most importantly, what affect [sic] it had on the defendant's ability to prepare for trial.
Sinclair v. State, 657 So.2d 1138, 1140 (Fla.1995) (citations omitted); see also State v. Hall, 509 So.2d 1093 (Fla.1987).
In this case, after the trial court removed the jury once Mr. Smith testified that members of his crew told him that they had seen Mr. Thompson at the cemetery on the day of the murders, the following colloquy took place:
THE COURT: Mr. Watson [prosecutor], any objection to the jury being instructed to disregard the witness' last comments other than the answer that, no, I did not see him, to disregard the remainder of his answer?
MR. WATSON: No.
THE COURT: Now, I have another question. Mr. Watson, have you ever heard before the answer given by Mr. Smith before this day about the crew having seen Mr. Thompson carrying Mr. Swack and Ms. Nancy out of the office?
MR. WATSON: Mr. Smith has told me that there was someone who worked on his crew named, I believe, Richie.
THE WITNESS: Richard.
THE COURT: Mr. Smith, just be quiet while I listen to the attorneys.
MR. WATSON: That supposedly saw that. I asked him if he could attempt to locate and either find Richie or find someone who knew him. To the best of my knowledge he has never been able to *520 locate Richie, and I've discussed with Mr. Smith how to answer my questions and that I wasn't going to ask him anything that called for what someone else saw. And I think if we had stopped with his answer no and left well enough alone instead of going on we wouldn't have run into this problem.
THE COURT: Well, that's true, if the witness had stopped, but the witness didn't stop.
MR. WATSON: Well, there was a pause between when he said no and when he begins again, and I think that Mr. Johnson could have cut him off and perhaps should have.
THE COURT: Well, it's certainly not Mr. Johnson's fault that the witness volunteered this information. That's just the way it is. He volunteered the information. He wanted to say it. He wanted to get it out and he got it out.
I'll instruct the jury to disregard all except the answer no by this witness to the last question.
Mr. Watson, this concerns me. When was the first time that anybody from law enforcement, and I include the State Attorney's Office, knew about this information that Mr. Smith has just testified to?
MR. WATSON: Probably
THE COURT: About this alleged eye witness.
MR. WATSON: Probably about two weeks ago when he came by my office. He came to my office via subpoena I had a discussion with him about what his testimony would be.
THE COURT: So whether Detective Childers interviewed Mr. Smith on August 20, whatever it was, 7th or 8th, there was no mention of that?
MR. WATSON: No. No. He was interviewed twice. He's interviewed once before. They have the incident at Clementi's and once afterward and at no time does Mr. Smith offer to the detectives any information about any third party seeing anyone.
. . . .
THE COURT: All right. I'm going to deny the motion for mistrial. I'm going to instruct the jury to disregard I'm inclined to call Detective Childers as a court witness and have him testify.
MR. WATSON: Well, I plan to call him and either he can or I can, however you would like.
MR. JOHNSON: Judge
MR. WATSON: If he doesn't want it bought up.
MR. JOHNSON: I'm not saying that. I'm going to give up opening and closing for the purpose of calling him back.[10]
MR. WATSON: But if he doesn't want to ring the bell again with asking Detective Childers this man never told you that somebody else said anything, I don't want to ring the bell again.
MR. JOHNSON: I don't want to do it, but I think that the Court is saying that is the Court is concerned that there may be something other than ringing the bell. I don't want to do it. I prefer to leave it alone.
MR. MURPHY [Defense Co-Counsel]: Your Honor, I think that maybe we need to talk to Detective Childers out of the presence of the jury to find out indeed that he didn't hear this information.
THE COURT: Well, I wouldn't just bring him in here and wait for him to say, oh, yes, I forgot to tell everybody in *521 the world that Mr. Smith told me about this other witness.
All right, I'll bring the jury back in. Are you going to have any further questions of Mr. Smith?
MR. JOHNSON: No. I'll take my seat.
These facts do not conclusively demonstrate that Thompson is entitled to no relief. Mr. Smith's testimony was the only direct evidence which placed Thompson at the cemetery near the time of the murders. Consequently, any further information which this witness might have had, and which was known by the State, would have likely been of some relevance. We therefore remand this claim to the trial court for consideration of this subject matter after an evidentiary hearing. See, e.g., Collins v. State, 671 So.2d 827, 828 (Fla. 2d DCA 1996) (remanding for evidentiary hearing to determine if defense counsel was ineffective in not requesting a Richardson hearing when witness gave testimony tending to locate defendant at scene of the crime).
Because the interests of justice require an evidentiary hearing on at least those three addressed ineffective assistance of counsel claims, we hold that, other than those claims rejected herein, judicial fairness and efficiency require that the trial court also hear the balance of Thompson's claims regarding the ineffective assistance of his trial counsel. Thus, the trial court is to conduct a hearing and make findings regarding the ineffective assistance of counsel claims raised here that have not been rejected herein.

Petition For Writ of Habeas Corpus
Thompson's petition for writ of habeas corpus presents one claim which also relates to appellate counsel's failure to raise, during the direct appeal, any error with respect to juror Lenora Wolcott being a member of the panel in Thompson's case. This claim is based on the same facts previously discussed in connection with our analysis of the appeal of the denial of the rule 3.850 motion. There, Thompson argued that his trial counsel was ineffective in failing to seek juror Wolcott's removal. Here, however, Thompson argues that appellate counsel should have asserted on direct appeal that the trial court erred in allowing juror Wolcott to remain on the panel. More specifically, he maintains that the trial court had the legal responsibility to dismiss her for cause either at the request of defense counsel or sua sponte.
At the outset, we must determine whether this argument would have been successful on direct appeal. See Kokal v. Dugger, 718 So.2d 138, 142 (Fla.1998) ("Appellate counsel cannot be faulted for failing to raise a nonmeritorious claim."); see also Chandler v. Dugger, 634 So.2d 1066 (Fla.1994) (same). As to the first part of Thompson's argument, the trial judge could not have erred in failing to excuse juror Wolcott for cause upon defense counsel's motion because defense counsel made no such motion. Thus, if any claim should have been presented on direct appeal it would have related exclusively to the trial court's failure to remove the juror on its own motion.
We conclude that appellate counsel did not render ineffective assistance during the direct appeal because, even if this issue had been presented at that time, it would not have been resolved in Thompson's favor. Specifically, where a defendant alleges that a trial court erred in failing to excuse a juror, reversible error will not be found unless the defendant establishes that "all peremptories had been exhausted and that an objectionable juror had to be accepted." Pentecost v. State, 545 So.2d 861, 863 n. 1 (Fla.1989). *522 In this case, not only did defense counsel have unused peremptory challenges, he had all ten of them. That is, not a single peremptory challenge was used to strike a juror. Thus, we conclude that no prejudice resulted as the issue, even if it had been presented on direct appeal, would have been decided adversely to Thompson's position. Accordingly, we decline to grant habeas relief.

CONCLUSION
Based on the above analysis, we remand the ineffective assistance of counsel claims raised by Thompson here, other than those rejected herein, for an evidentiary hearing. As to the remaining claims, we affirm the trial court's summary denial. Finally, we deny Thompson's petition for habeas relief.
It is so ordered.
SHAW, HARDING, ANSTEAD, PARIENTE, and LEWIS, JJ., concur.
WELLS, C.J., dissents with an opinion.
QUINCE, J., recused.
WELLS, C.J., dissenting.
I dissent because I believe that the trial judge in her thirty-seven page order adequately and correctly addressed the issues which form the basis of the majority's reversal. I conclude the majority's reversal extends Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), beyond the intended analysis of the United States Supreme Court.
In respect to the voir dire issue, the same judge presided over the trial and the postconviction hearing. Though I agree that the sufficiency of the evidence to convict relied on in the order denying relief was not in and of itself the basis upon which relief should be denied, the entire record of the voir dire and the trial also have to be considered. The jurors, including juror Wolcott, agreed to base their decision only on the evidence. They were instructed that the defendant had a right to remain silent and that the defendant's failure to testify should not influence the verdict in any way. I believe the trial judge was correct in finding that the defendant did not demonstrate in his motion a basis upon which relief could be granted.
In respect to the male caucasian hair, it seems to me that this entire claim is so speculative that it forms no basis for relief. However, I would favor DNA testing on any material from the crime scene which can be so tested. But that is a separate issue not raised in this motion.
In respect to the claimed failure to request a Richardson hearing, this issue is so ill defined in appellant's papers that I do not find a basis for reversal of the trial judge's postconviction order.
NOTES
[1] Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).
[2] The jury's recommendation of death was by a vote of seven to five.
[3] See Huff v. State, 622 So.2d 982 (Fla.1993).
[4] Thompson appeals the summary denial of his claims that: (1) he received ineffective assistance of counsel during the guilt and penalty phases of his trial; (2) jury instructions impermissibly shifted the burden to him to prove that mitigators outweighed aggravators; (3) Florida's capital sentencing statute is unconstitutional; (4) the "during the course of a felony" aggravator constitutes an unconstitutionally automatic aggravator; (5) the Death Penalty Reform Act and death by lethal injection are unconstitutional; (6) he did not receive a competent mental health evaluation; (7) the jury improperly considered non-statutory aggravators; (8) jury instructions unconstitutionally diminished the jury's sense of responsibility; (9) the CCP instruction is vague and overbroad; and (10) his trial was fraught with errors which may not be deemed harmless when viewed as a whole.
[5] Claims (2), (3), and (4) are procedurally barred because they should have been raised on direct appeal. See, e.g., Sireci v. State, 773 So.2d 34, 40 n. 10 (Fla.2000); Harvey v. Dugger, 656 So.2d 1253, 1256 (Fla.1995).

Within claims (2) and (4), Thompson seeks to circumvent the procedural bar as to the substantive claims by interjecting conclusory allegations of ineffective assistance of counsel for failure to raise an appropriate objection or otherwise preserve the issue for appellate review. We find these allegations to be legally and facially insufficient to warrant relief under Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), because at no point has Thompson alleged how he was prejudiced by counsel's failure to object or raise the asserted error. See Sireci, 773 So.2d at 40 n. 11(quoting Kennedy v. State, 547 So.2d 912, 913 (Fla.1989) ("A defendant may not simply file a motion for postconviction relief containing conclusory allegations that his or her trial counsel was ineffective and then expect to receive an evidentiary hearing.")).
Moreover, the substantive issues presented in claims (2) and (4) are without merit as a matter of law. See, e.g., Downs v. State, 740 So.2d 506, 509 (Fla.1999) (citing Harvey v. Dugger, 656 So.2d 1253, 1257 (Fla.1995) (finding ineffective assistance of counsel claim based on counsel's failure to object to jury instruction that allegedly shifted burden to defense to establish that mitigators outweighed aggravators to be without merit as a matter of law)); Hudson v. State, 708 So.2d 256, 262 (Fla.1998) (rejecting argument that the murder in the course of a felony aggravator is an invalid, automatic aggravator). Thus, even if Thompson had sufficiently alleged prejudice, counsel could not be deemed deficient for failing to object at trial. See Mendyk v. State, 592 So.2d 1076, 1080 (Fla. 1992) ("When jury instructions are proper, the failure to object does not constitute a serious and substantial deficiency that is measurably below the standard of competent counsel.").
Similarly, claim (3), which is procedurally barred but which does not include any allegation of ineffective assistance of counsel (as is the case with claims (2) and (4)), is also without merit as a matter of law. See, e.g., Knight v. State, 746 So.2d 423, 429 (Fla.1998) (rejecting claim that Florida's death penalty statute is unconstitutional); Fotopoulos v. State, 608 So.2d 784, 794 n. 7 (Fla.1992) (same).
As claim (5), Thompson asserts that the Death Penalty Reform Act ("DPRA") and execution by lethal injection are unconstitutional. The part of the claim relating to the constitutionality of the DPRA is without merit because we have already determined that the DPRA is unconstitutional. See Allen v. Butterworth, 756 So.2d 52 (Fla.2000). The remainder of the claim is without merit as a matter of law because this Court has previously concluded that the statute authorizing death by lethal injection does not offend notions of separation of powers; its retroactive application does not violate state or federal ex post facto clauses; and death by lethal injection does not constitute cruel and unusual punishment. See Sims v. State, 754 So.2d 657 (Fla. 2000).
We further decline to address claims (6) through (9) because they were not properly presented before the trial court (i.e., absolutely no factual basis or argument was asserted in support of these claims in the initial or amended motions). See Doyle v. State, 526 So.2d 909, 911 (Fla.1988) (finding issues which were raised in the filings to this Court, but not in the 3.850 motion presented before the trial court, to be procedurally barred); see also Shere v. State, 742 So.2d 215, 218 n. 7, n. 9 (Fla.1999) (same).
Finally, Thompson's cumulative error claim (claim (10)) has been rendered moot in light of our decision to remand this case for an evidentiary hearing. See Gaskin v. State, 737 So.2d 509, 513 n. 9 (Fla.1999).
[6] These claims pertain to defense counsel's failure to: (a) conduct an adequate jury voir dire examination; (b) call Eddie Houser and Lonnie White as alibi witnesses; (c) investigate the crime scene, challenge its integrity, and challenge the State's handling of evidence; (d) investigate and argue effect of mental retardation on competency to stand trial and on mental state at the time of the offense; (e) adequately cross-examine the medical examiner; (f) present evidence of drug/alcohol abuse on the day of the crimes; (g) properly voir dire experts at the competency hearing; (h) adequately cross-examine Kathleen Shannon, Thompson's former probation officer; (i) object to the admission of an identification card; (j) request a hearing after it appeared that the State might have violated a discovery rule; (k) object to the State's closing argument at the penalty phase; (l) provide the mental health experts with adequate background information; (m) meet with Thompson in preparation for the penalty phase.
[7] Richardson v. State, 246 So.2d 771 (Fla. 1971).
[8] Thompson's claim actually relates to counsel's failure to challenge not just Ms. Wolcott, but also his failure to challenge potential juror Russel. Because Russel never served on the jury, however, we decline to address counsel's performance as it relates to Russel.
[9] After all, if sufficiency of the evidence were the standard, no defendant could ever successfully assert a collateral claim of ineffective assistance of counsel because, presumably, by the time the defendant is able to raise such a claim, his or her conviction would have already been affirmedsomething which would only happen if the evidence was sufficient to support the conviction. The test is whether "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694, 104 S.Ct. 2052.
[10] Detective Childers was recalled by the State during its case-in-chief for reasons entirely unrelated to this claim. This particular issue was not addressed again.