866 So.2d 1 (2003)
Michael Allen GRIFFIN, Appellant,
v.
STATE of Florida, Appellee.
No. SC01-457.
Supreme Court of Florida.
September 25, 2003.
Order Denying Rehearing January 29, 2004.
*4 Michael V. Giordano of Giordano & Luchetta, Tampa, Florida, for Appellant.
Charles J. Crist, Jr., Attorney General, and Sandra S. Jaggard, Assistant Attorney General, Miami, Florida, for Appellee.
PER CURIAM.
Michael Allen Griffin appeals an order of the circuit court denying his motion for postconviction relief under Florida Rule of Criminal Procedure 3.850. We have jurisdiction. See art. V, § 3(b)(1), Fla. Const. For the reasons explained below, we affirm the circuit court's denial of postconviction relief.
Griffin was convicted of first-degree murder of law enforcement officer Joseph Martin, attempted first-degree murder of law enforcement officer Juan Crespo, burglary *5 of a hotel room, two counts of grand theft (one count involving a stolen vehicle and the other involving items stolen from the hotel room), and one count of the unlawful possession of a firearm by a convicted felon. The factual circumstances of the crimes are set forth fully in this Court's opinion on direct appeal. See Griffin v. State, 639 So.2d 966 (Fla.1994).
The jury recommended death by a vote of ten to two. The trial court found four aggravating circumstances: (1) Griffin had a prior violent felony (the attempted murder of Officer Crespo); (2) the crime was committed during the commission of a burglary; (3) the murder was committed to avoid arrest; and (4) the murder was cold, calculated, and premeditated (CCP). In mitigation, the trial court found that Griffin was twenty years old at the time of the murder, had shown remorse, had a traumatic childhood, and had a learning disability. The trial court found that the aggravating circumstances outweighed the mitigating circumstances and followed the jury recommendation and sentenced Griffin to death.
On appeal, Griffin raised two issues relating to the guilt phase of his trial[1] and four issues relating to the penalty phase.[2] This Court affirmed both the convictions and the sentence of death. Griffin, 639 So.2d at 972. The United States Supreme Court denied Griffin's petition for certiorari. Griffin v. Florida, 514 U.S. 1005, 115 S.Ct. 1317, 131 L.Ed.2d 198 (1995).
Thereafter, Griffin filed a motion for postconviction relief pursuant to Florida Rule of Criminal Procedure 3.850, raising thirty-one claims of error. The circuit court held a Huff[3] hearing and subsequently entered an order summarily denying most of Griffin's claims as being procedurally barred or without merit. The circuit court granted an evidentiary hearing on the following claims: (1) trial counsel was ineffective for failing to properly present evidence of Griffin's mental condition and other background mitigating evidence and failing to properly advise Griffin about his comments to the court at the time of sentencing; and (2) the sentencing judge and the State allegedly engaged in ex parte communication concerning the preparation of the sentencing order.
A six-day evidentiary hearing was held in September and October 2000. During the evidentiary hearing, the circuit court heard testimony from several defense and state witnesses. Following the hearing, the circuit court denied relief on both claims. As to Griffin's claim of ineffective assistance of counsel in the presentation of mental health evidence, the circuit court concluded that the credible evidence did not support Griffin's assertion that he suffers from organic brain damage or any significant mental illness. The circuit court also found that trial counsel investigated Griffin's background, had him evaluated by a mental health professional, and made an informed tactical decision not to present mental health evidence. In regard to the lay witnesses that Griffin asserted could have testified about mitigating circumstances in his background, the circuit court concluded *6 that the testimony of these witnesses was either cumulative to that presented at trial or counsel made a strategic decision not to present the testimony. The circuit court also noted that had this mental health and mitigating evidence been presented at trial it would have revealed conflicting and damaging information about Griffin. Thus, the court concluded, Griffin could not show that he was prejudiced by counsel's failure to present the evidence.
As to Griffin's claim that counsel failed to properly advise him about his comments to the court at the time of sentencing, the circuit court found that counsel was under the impression that Griffin would be speaking about remorse, but Griffin took it upon himself to expand his comments further. Thus, counsel could not be faulted for not preventing Griffin from saying something that could later be used against him and was not ineffective in this regard. On the second claim of ex parte communication between the sentencing judge and the State in the preparation of the sentencing order, the circuit court found that the judge asked both parties to provide sentencing memoranda discussing the aggravating and mitigating circumstances, that defense counsel received a copy of the State's memorandum, and that there was nothing wrong in the judge's use of the State's memorandum in the preparation of the sentencing order.
Griffin has appealed the circuit court's denial of postconviction relief to this Court, raising twenty-one issues on appeal. Griffin contends that (1) trial counsel rendered ineffective assistance during the penalty phase of trial by failing to investigate and present available mitigating evidence; (2) the trial court failed to independently consider and weigh the aggravating and mitigating factors and counsel was ineffective in failing to object at the time of sentencing; (3) postconviction counsel was hampered in his representation of Griffin due to a large workload, a lack of funding, and the failure of various agencies to provide requested public records; (4) trial counsel rendered ineffective assistance during the guilt phase of trial by failing to adequately cross-examine various State witnesses, failing to advise Griffin of possible judicial bias, conceding guilt during opening argument, and failing to argue an alternative theory of defense;[4] (5) trial counsel rendered ineffective assistance by failing to move for a change of venue based on pretrial publicity; (6) trial counsel rendered ineffective assistance by failing to object to the use of shackles during trial; (7) trial counsel rendered ineffective assistance by failing to adequately question prospective jurors during voir dire; (8) trial counsel rendered ineffective assistance by failing to object to improper prosecutorial argument; (9) trial counsel rendered ineffective assistance by failing to move for the suppression of statements Griffin made to the police; (10) Griffin is innocent of the murder and is ineligible for the death penalty and the jury instruction on the CCP aggravating circumstance was unconstitutionally vague; (11) Griffin was absent during critical stages of his trial; (12) the jury was erroneously instructed regarding the standard for evaluating expert testimony; (13) the jury was not properly instructed on the proof necessary to establish an aggravating circumstance or how to weigh the aggravating circumstances, the jury was allowed to consider an automatic aggravator, and the sentencing order failed to consider and weigh mitigating *7 evidence presented at trial; (14) the jury instructions unconstitutionally diluted the jury's responsibility for its role in the sentencing process; (15) Rule 4-3.5(d)(4) of the Rules Regulating the Florida Bar, which prevents counsel from contacting jurors, is unconstitutional; (16) Florida's capital sentencing scheme is unconstitutional on its face and as applied to Griffin; (17) appellate counsel rendered ineffective assistance on direct appeal based upon an inadequate record on appeal; (18) the cumulative effect of errors by trial counsel, the prosecutor, and the trial court deprived Griffin of a fair trial; (19) the jury was erroneously instructed on the avoid arrest aggravating circumstance; (20) Griffin is insane to be executed; and (21) the trial court erred in admitting autopsy photographs of the victim during the guilt phase.
Initially, we note that Griffin attempts to incorporate all of the claims, facts, and arguments from his postconviction motion at the circuit court into his brief to this Court. However, "[m]erely making reference to arguments below without further elucidation does not suffice to preserve issues, and these claims are deemed to have been waived." Duest v. Dugger, 555 So.2d 849, 852 (Fla.1990). Thus, in those instances where Griffin does not elaborate on his claims on appeal, this Court will not look to his postconviction motion for explanation.
The circuit court conducted an evidentiary hearing on the first two claims that Griffin raises on appeal: ineffective assistance of trial counsel for failure to investigate and present mental health and other mitigating evidence; and that the trial court failed to independently consider and weigh the aggravating factors and counsel rendered ineffective assistance for failure to object. This second claim is based on Griffin's assertion that the trial court engaged in impermissible ex parte contact with the State in the preparation of the sentencing order.
At the evidentiary hearing, the circuit court heard testimony from defense expert clinical neuropsychologist Dr. Ernest Bordini, State expert clinical neuropsychologist Dr. Jane Ansley, Griffin's mother Marianne Griffin, Griffin's half-brother Charles Griffin, Jose Montejo, who was Griffin's "foster" father during his early childhood, Griffin's friend Steve Minnis, who considered himself Griffin's "big brother," Griffin's trial counsel Andrew Kassier, and state attorney Penny Brill, who was part of the State's prosecution team at trial.
After the hearing, the circuit court issued a six-page order denying relief on the two claims presented at the hearing. The court concluded that trial counsel was not ineffective in his representation of Griffin on the mental health and mitigating evidence issue and that the evidence did not support Griffin's claim of ex parte communication in the preparation of the sentencing order.

EX PARTE COMMUNICATION
Griffin argues he is entitled to a new sentencing hearing because the trial court asked the prosecutor to prepare the sentencing order. The circuit court heard testimony relating to Griffin's claim that the sentencing judge and the State engaged in ex parte communication about the sentencing order. The evidentiary hearing testimony of defense counsel Kassier and prosecutor Brill supports the circuit court's finding that no ex parte communication occurred. Kassier testified that the trial judge asked him to provide a sentencing memorandum on mitigation and asked the prosecutor to provide the same as to aggravation. Brill testified that one of the other prosecutors informed her of the trial *8 judge's request and asked her to prepare the sentencing memorandum; that she delivered a copy of the memorandum to Kassier, even though this was not reflected on the document; and that her memorandum did not suggest what weight the judge should give the aggravating circumstances nor conclude that the aggravators outweighed the mitigators. Thus, we affirm the denial of relief on this claim.

INEFFECTIVE ASSISTANCE OF COUNSEL
Griffin alleges that trial counsel rendered ineffective assistance of counsel in various aspects of his representation. Ineffective assistance of counsel claims present a mixed question of law and fact subject to plenary review based on the test espoused in Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). See Stephens v. State, 748 So.2d 1028, 1033 (Fla.1999). Specifically, the defendant must show that counsel's performance was deficient, which requires showing "that counsel made errors so serious that counsel was not functioning as the `counsel' guaranteed the defendant by the Sixth Amendment." Strickland, 466 U.S. at 687, 104 S.Ct. 2052. Second, the defendant must show that the deficient performance prejudiced the defense, which requires showing "that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Id. Absent both showings, "it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable." Id. Furthermore, in reviewing counsel's performance, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Id. at 689, 104 S.Ct. 2052. In determining whether counsel's performance amounted to ineffective assistance, an appellate court must conduct an independent review of the trial court's legal conclusions, while giving deference to the trial court's factual findings. Stephens, 748 So.2d at 1033. It is against this standard that we examine Griffin's claims of ineffective assistance of counsel.

Presentation of Mitigating Evidence
Griffin alleges that counsel was ineffective in his presentation of the mental health and other mitigating evidence. We agree with the circuit court's assessment that "the credible evidence does not support a conclusion that the defendant suffers from any organic brain damage" or "any significant mental illness." In preparation for trial, defense counsel had Griffin evaluated by psychologist Dr. Merry Haber, who offered her opinion that the mental health mitigation evidence would do more harm than good. Dr. Haber never recommended that Griffin be evaluated by a neuropsychologist. The two neuropsychologists who testified at the evidentiary hearing agreed that Griffin suffers from a personality disorder with antisocial and narcissistic features and has a learning disorder. However, the experts offered conflicting opinions as to Griffin's mental impairment. Dr. Ansley testified that Griffin had no history of neurological problems, had a normal EEG, scored in the average range on the great majority of the tests administered, and had no pattern of abnormality. While Dr. Bordini offered a different assessment of Griffin's mental impairment, he also described Griffin as violent and antisocial and revealed details of a long history of criminal behavior. This information was in direct contradiction of the trial testimony by defense witnesses who portrayed Griffin as a good, sympathetic, and loving person.
With regard to the lay witnesses who testified at the postconviction hearing about Griffin's family background and childhood, the evidentiary hearing revealed *9 that Griffin did not provide information about these claims to trial counsel, despite proper inquiry by counsel. Further, the record supports the circuit court's conclusions that trial counsel made a strategic decision not to call Griffin's mother based on her mental illness and confusion and her unavailability for trial due to ill health and that even though Griffin's half-brother could have added some details about Griffin's upbringing, this information was largely cumulative and counsel had been advised that the half-brother was unavailable during the trial. Furthermore, while Griffin's mother and half-brother could have provided additional information about his neglected childhood, these relatives had limited contact with Griffin during his childhood and much of this information was presented at trial through other witnesses. We also agree with the circuit court's determination that the testimony of Griffin's friend Minnis was a "double-edged sword." While Minnis could have revealed information about his association with Griffin, he would also have revealed negative information about Griffin's penchant for stealing autos and his previous difficulty with the officer who was the murder victim. Further, the evidence showed that defense counsel did attempt to call Minnis as a witness, but Minnis left the courthouse before testifying and then refused counsel's attempts to contact him.
In light of this evidence presented at the evidentiary hearing, we agree with the circuit court's conclusion that Griffin cannot prevail on his claim of ineffective assistance of counsel in the investigation and presentation of mental health and other mitigating evidence. Trial counsel is not deficient where he makes a reasonable strategic decision to not present mental mitigation testimony during the penalty phase because it could open the door to other damaging testimony. See Ferguson v. State, 593 So.2d 508, 510 (Fla.1992) (finding counsel's decision to not put on mental health experts to be "reasonable strategy in light of the negative aspects of the expert testimony" where experts had indicated that defendant was malingering, a sociopath, and a very dangerous person); see also State v. Bolender, 503 So.2d 1247, 1250 (Fla.1987) (holding that "[s]trategic decisions do not constitute ineffective assistance if alternative courses of action have been considered and rejected"). Accordingly, we affirm the denial of relief on this claim.
With the exception of the two claims discussed above, the postconviction court summarily denied relief on Griffin's other claims, including other claims of ineffective assistance of counsel. As a general proposition, a defendant is entitled to an evidentiary hearing on a postconviction relief motion unless (1) the motion, files, and records in the case conclusively show that the prisoner is entitled to no relief, or (2) the motion or a particular claim is legally insufficient. See, e.g., Maharaj v. State, 684 So.2d 726, 728 (Fla.1996); Anderson v. State, 627 So.2d 1170, 1171 (Fla.1993); Fla. R.Crim. P. 3.850(d). The defendant bears the burden of establishing a prima facie case based upon a legally valid claim. Mere conclusory allegations are not sufficient to meet this burden. Kennedy v. State, 547 So.2d 912, 913 (Fla.1989). In cases where there has been no evidentiary hearing, the Court must accept the factual allegations made by the defendant to the extent that they are not refuted by the record. Peede v. State, 748 So.2d 253, 257 (Fla.1999); Valle v. State, 705 So.2d 1331, 1333 (Fla.1997). This Court must examine the remainder of Griffin's claims to determine if each is legally sufficient, and, if so, whether the claim is refuted by the record.

Guilt Phase Ineffectiveness
Griffin alleges four separate deficiencies relating to the guilt phase of his *10 trial: (1) counsel conceded Griffin's guilt to the burglary and car theft charges; (2) counsel was ineffective in cross-examination of State witnesses Crespo and Tarallo; (3) counsel failed to advise Griffin of possible judicial bias and then move for recusal of the judge; and (4) counsel failed to present an alternative theory of defense. We address each of these subclaims in turn.
Not all decisions of counsel are reviewable under Strickland as constituting ineffective assistance of counsel. "[A]ny specific discretionary or judgmental act or position of trial counsel, whether tactical or strategic, on an inquiry as to effectiveness of counsel" will not be considered under Strickland. McNeal v. State, 409 So.2d 528, 529 (Fla. 5th DCA 1982). Sometimes a concession of guilt to some of the prosecutor's claims is good trial strategy and within defense counsel's discretion in order to gain credibility and acceptance of the jury. As explained by the district court in McNeal:
When faced with the duty of attempting to avoid the consequences of overwhelming evidence of the commission of an atrocious crime, such as a deliberate, considered killing without the remotest legal justification or excuse, it is commonly considered a good trial strategy for a defense counsel to make some halfway concessions to the truth in order to give the appearance of reasonableness and candor and to thereby gain credibility and jury acceptance of some more important position.
Id.
In considering McNeal's petition for federal habeas relief, the United States Court of Appeals for the Eleventh Circuit distinguished McNeal's circumstance from a situation in which defense counsel concedes guilt to the offense charged and makes a plea for leniency. While the latter situation requires a client's consent, the former is counsel's strategy that may bind a client even when made without consultation. See McNeal v. Wainwright, 722 F.2d 674, 677 (11th Cir.1984); see also Atwater v. State, 788 So.2d 223, 231 (Fla.2001) (finding that defense counsel's concession of guilt to lesser offense than first-degree murder was reasonable and did not amount to constitutional violation). Thus, trial counsel's concession of Griffin's guilt to the lesser offenses was proper trial strategy here. We affirm the circuit court's summary denial of relief on this issue.
Griffin also argues that trial counsel was ineffective in his cross-examination of State witnesses Officer Crespo and codefendant Tarallo. During examination of Tarallo, counsel elicited testimony about Tarallo's account of being beaten by the police and confessing out of fear and about the benefits that Tarallo received from his plea agreement with the State. Counsel repeatedly tried to get Tarallo to admit that his statement inculpating Griffin was not truthful, but Tarallo steadfastly insisted on his truthfulness. While counsel did not question Officer Crespo about discharging his weapon inside the patrol car, this information was presented at trial by way of expert ballistics testimony. Griffin claims that had counsel questioned Crespo about the shots, it would have supported Griffin's claim that he only fired in response to being fired upon by the police. However, Griffin's theory was contradicted by the testimony of both Crespo, who stated that he did not fire the first shot, and Tarallo, who stated that the first shot was fired from the location next to him which was occupied by Griffin. Thus, we agree with the circuit court's conclusion that Griffin's claim regarding counsel's questioning of these witnesses does not satisfy either Strickland prong.
*11 Griffin also argues that counsel was ineffective in failing to challenge possible judicial bias and for not filing a motion to disqualify the judge. Griffin cited two grounds for recusal in his postconviction motion to the circuit court.[5] First, Griffin alleges that in sentencing him on a previous burglary in 1987, the judge stated his belief that Griffin would keep on committing crimes. Second, Griffin argues that the judge's ex parte explanation to the victim's father of a delay in the trial demonstrated prejudice. The circuit court summarily denied this claim because the grounds cited by Griffin were not sufficient to prevail on a motion to disqualify. Thus, counsel's failure in this regard could not meet the Strickland prejudice prong.
A motion to disqualify will be dismissed as legally insufficient if it fails to establish a well-grounded fear on the part of the movant that he will not receive a fair hearing. Correll v. State, 698 So.2d 522, 524 (Fla.1997); Quince v. State, 592 So.2d 669, 670 (Fla.1992). To determine if a motion to disqualify is legally sufficient, the court must determine "`whether the facts alleged would place a reasonably prudent person in the fear of not receiving a fair and impartial trial.'" Correll, 698 So.2d at 524 (quoting Livingston v. State, 441 So.2d 1083, 1087 (Fla.1983)). The grounds asserted by Griffin in his motion below do not meet this standard. Thus, even if Griffin's counsel had moved for recusal on the grounds asserted, he would not have prevailed and the Strickland prejudice prong cannot be met. Thus, the circuit court properly denied relief on this claim.
Griffin also asserts that counsel was ineffective for failing to investigate and present an alternative theory of defense (i.e., the police officers fired first and Griffin only fired in self-defense). However, we conclude that summary denial was proper because all of the testimony and evidence shows that Griffin shot first and he did not suggest that any realistic evidence exists to support his alternative theory of defense. Thus, counsel's performance in this regard cannot be deemed deficient.
We conclude that Griffin is not entitled to postconviction relief on any of his claims of ineffective assistance during the guilt phase of the trial. Thus, we affirm the circuit court's summary denial.

Shackles
Griffin argues that trial counsel was ineffective in failing to object to the use of shackles during trial. The trial record completely refutes Griffin's claim regarding this matter. During voir dire, the judge notified the parties that he had received information that an escape was being planned by Griffin. The judge stated his intent to put a leg brace on Griffin as a precaution. However, when defense counsel objected to this measure, the judge instead increased courtroom security. Later in the trial, one juror inadvertently entered the courtroom while Griffin was arriving in shackles, but was quickly removed from the courtroom by the security officers. Upon inquiry by the judge, the juror stated that he saw Griffin sitting at the table but did not notice anything unusual. Without objection from the parties, the judge concluded that there was no reason to remove this juror. Thus, the *12 record supports the circuit court's summary denial on this claim.

Pretrial Publicity
Griffin next asserts that trial counsel was ineffective in failing to move for a change of venue based on pretrial publicity. The trial record indicates that while trial counsel did not move for a change of venue, he did bring the issue of pretrial publicity to the court's attention immediately before voir dire began. Counsel voiced his belief that it would be difficult to pick a fair and impartial jury and requested individual voir dire of the jurors as to pretrial publicity. The trial judge explained that he had already made alternate arrangements if it proved impossible to choose a fair and impartial jury in Dade County.[6]
Trial counsel's failure to move for a change of venue does not necessarily constitute ineffective assistance of counsel. See Wike v. State, 813 So.2d 12 (Fla.2002) (concluding that counsel was not deficient for failing to move for change of venue when counsel discussed venue issue with defendant and prepared motion for filing, but defendant opposed change of venue and concluding that prejudice prong was not met because defendant failed to establish that grounds existed for venue change or that there was substantial difficulty in seating fair or impartial jury). "When applying the prejudice prong [of Strickland] to a claim that defense counsel was ineffective for failing to move for a change of venue, the defendant must, at a minimum, `bring forth evidence demonstrating that there is a reasonable probability that the trial court would have, or at least should have, granted a motion for change of venue if [defense] counsel had presented such a motion to the court.'" Id. at 18 (quoting Meeks v. Moore, 216 F.3d 951, 961 (11th Cir.2000)). Thus, the real issue here is whether a change of venue was proper and whether counsel would have been successful had he moved for a change of venue. The test for determining whether to grant a change of venue is whether the inhabitants of a community are so infected by knowledge of the incident and accompanying prejudice, bias, and preconceived opinions that jurors could not possibly put these matters out of their minds and try the case solely on the evidence presented in the courtroom. See McCaskill v. State, 344 So.2d 1276, 1278 (Fla.1977). In exercising its discretion regarding a change of venue, a trial court must make a two-pronged analysis, evaluating: (1) the extent and nature of any pretrial publicity; and (2) the difficulty encountered in actually selecting a jury. See Rolling v. State, 695 So.2d 278, 285 (Fla.1997). Of course, pretrial publicity is normal and expected in certain kinds of cases, and that fact standing alone will not require a change of venue. Id.
In the instant case, the judge asked if any of the venire members had heard about the case; nineteen responded that they had. The judge then allowed individual voir dire of these venire members as to their knowledge of the case. Three venire members were excused for cause based on exposure to publicity; one was excused for cause based on her death penalty views; and one was excused for cause based on his bias against the police. Of the remaining fourteen venire members who had heard about the case, twelve had only vague remembrances of reading something about the case. All fourteen stated that they had not formed an opinion and would decide the case on the facts *13 presented at trial. Based on this record, even if counsel had moved for a change of venue there is no reasonable probability that the court would have granted the motion as there was little difficulty in selecting an impartial jury. Thus, summary denial on this issue was proper.

Jury Voir Dire
Griffin asserts that trial counsel was ineffective in failing to adequately voir dire prospective jurors as to pretrial publicity and their personal views toward the death penalty and mitigating circumstances. Further, he argues that the circuit court should have conducted an evidentiary hearing on this claim. However, in his postconviction motion to the circuit court Griffin made only conclusory allegations which were not sufficient to permit the circuit court to examine the allegations against the record. Thus, an evidentiary hearing was not required. See Ragsdale v. State, 720 So.2d 203, 207 (Fla.1998) ("A hearing is warranted on an ineffective assistance of counsel claim only where a defendant alleges specific facts, not conclusively rebutted by the record, which demonstrate a deficiency in the performance that prejudiced the defendant.").
Moreover, the trial record of voir dire indicates that both defense counsel and the prosecutor questioned venire members about their views on the death penalty and various mitigating factors. In fact, eight venire members were excused because of their strong opinions in favor of the death penalty. Thus, the record also refutes Griffin's claim of ineffective assistance during voir dire questioning.

Juror Challenge
Griffin also asserts that trial counsel was ineffective in failing to challenge juror Cabrera for cause. The circuit court concluded that neither Strickland prong could be met on the record of Cabrera's voir dire responses. Cabrera indicated that she had interned in the State Attorney's Office, but would not favor the State and could be fair to Griffin. Cabrera also indicated that her fiancé was an FBI agent and she had friends who were law enforcement officers, but it would not "consciously" affect her and she would decide the case on the law and the facts. Although Cabrera was not challenged for cause, she was ultimately excused through a peremptory challenge. While Cabrera may have expressed her ability to be fair in less than unequivocal terms at times during questioning, she was questioned extensively and adequately rehabilitated. The circuit court concluded that Cabrera's "true, honest belief" that she could be fair to both the defendant and the State was "sufficient."
Griffin cites Thompson v. State, 796 So.2d 511 (Fla.2001), as supporting his claim that an evidentiary hearing was required on this issue. While Thompson also involved an ineffective assistance of counsel claim based on trial counsel's failure to challenge a juror for cause, the similarity between the cases ends there. The Thompson juror was never individually questioned about her beliefs and was ultimately seated on the defendant's jury. Here, Cabrera was questioned at length and, while not challenged for cause, was removed by a peremptory strike and did not serve on Griffin's jury. Further, the trial court in Thompson applied the wrong standard in summarily denying the defendant's claim. Here, the voir dire transcript indicates that Cabrera met the test of juror competency in that she could "lay aside any bias or prejudice and render [her] verdict solely upon the evidence presented and the instructions on the law given to [her] by the court." Lusk v. State, 446 So.2d 1038, 1041 (Fla.1984). *14 Thus, we affirm the circuit court's summary denial of relief on this claim.

Jury Instructions
Griffin's next issues encompass a number of jury instruction claims, including that the cold, calculated, and premeditated instruction was unconstitutionally vague, the jury was not properly instructed on its consideration of the mitigating and aggravating factors, the instructions improperly shifted the burden to Griffin to prove that death was not the appropriate penalty, the trial court improperly instructed the jury as to the procedure for their vote,[7] the jury was erroneously instructed on the standard for judging expert testimony, the jury was not accurately instructed on the proof necessary to establish an aggravating circumstance or how to weigh the aggravating circumstances, the jury was allowed to consider an automatic aggravator in imposing the death sentence when instructed on the "committed during a burglary" aggravating circumstance, the jury was erroneously instructed as to their role in the sentencing process, and the avoid arrest instruction was unconstitutionally vague and resulted in impermissible doubling.
While substantive challenges to jury instructions should be raised on direct appeal, counsel's failure to object to the instructions at trial foreclosed Griffin from raising these claims on appeal. See State v. Delva, 575 So.2d 643, 644 (Fla. 1991) (explianing that jury instructions "are subject to the contemporaneous objection rule, and, absent an objection at trial, can be raised on appeal only if fundamental error occurred"). However, even if the substantive claims of instructional error had been properly raised on appeal, they would have been denied as being without merit. The instructions and comments by the prosecutor that purportedly diluted the jury's responsibility for its sentencing role are consistent with Florida's statutory scheme in which the jury "render[s] an advisory sentence to the court" and the trial court, "notwithstanding the recommendation of a majority of the jury," enters the sentence. § 921.141(2), (3), Fla. Stat. (1983); see also Combs v. State, 525 So.2d 853, 855-58 (Fla. 1988) (discussing the statutory role of the jury in the sentencing process in Florida). We have previously concluded that the "murder in the course of a felony" aggravating circumstance is not an unconstitutional automatic aggravator. Blanco v. State, 706 So.2d 7, 11 (Fla.1997); Johnson v. State, 660 So.2d 637, 647 (Fla.1995). We have also repeatedly rejected claims that the standard jury instruction impermissibly shifts the burden to the defense to prove that death is not the appropriate sentence. See, e.g., Sweet v. Moore, 822 So.2d 1269, 1274 (Fla.2002); Carroll v. State, 815 So.2d 601, 622-23 (Fla.2002); San Martin v. State, 705 So.2d 1337, 1350 (Fla.1997) (concluding that weighing provisions in Florida's death penalty statute requiring the jury to determine "[w]hether sufficient mitigating circumstances exist which outweigh the aggravating circumstances found to exist" and the standard jury instruction thereon did not unconstitutionally shift the burden to the defendant to prove why he should not be given a death sentence). Additionally, all of the issues in this claim were facially insufficient as Griffin merely made conclusory allegations in his postconviction motion below. He did not state how the standard instructions failed to channel the jury's *15 sentencing discretion, nor did he specify the aggravating circumstances upon which the jury was inadequately instructed. Griffin's conclusory allegations were facially insufficient to allow the trial court to examine the specific allegations against the record. Ragsdale v. State, 720 So.2d at 207. Thus, we affirm the circuit court's summary denial of relief on these substantive claims because they were either procedurally barred or facially insufficient.
To the extent that Griffin asserts ineffective assistance of counsel based on failure of counsel to object to the instructions relating to expert testimony and the CCP aggravating factor, we conclude that he has not met his burden under Strickland. As we explained in Thompson v. State, 759 So.2d 650, 665 (Fla.2000), it is not deficient performance when counsel fails to object to a standard instruction which has not been invalidated by this Court. Furthermore, although the CCP instruction given to Griffin's jury was later invalidated by this Court as unconstitutionally vague,[8] we have ruled that counsel cannot be deemed ineffective for not objecting to this CCP instruction as it was the standard jury instruction which had been approved by this Court. See Waterhouse v. State, 792 So.2d 1176, 1196 (Fla. 2001); Downs v. State, 740 So.2d 506, 518 (Fla.1999). Thus, Griffin's claims of ineffective assistance fail the first prong of Strickland and the circuit court's summary denial is affirmed.

Prosecutorial Argument
Griffin next contends that the prosecutor engaged in improper argument which denied him a fair trial and that counsel was ineffective in failing to object to the argument. The circuit court summarily denied this claim as being procedurally barred. We agree with the circuit court that those substantive claims which were preserved by objection at trial are procedurally barred as they could have and should have been raised on direct appeal. See Valle v. State, 705 So.2d at 1335; Harvey v. Dugger, 656 So.2d at 1256 ("[I]ssues that could have been, but were not, raised on direct appeal are not cognizable through collateral attack."). Thus, only Griffin's ineffective assistance of counsel claims were proper in his postconviction motion.
Counsel objected to some of the prosecutorial argument that Griffin cites in his claim, including alleged nonstatutory aggravation and golden rule argument. Thus, counsel's performance cannot be deemed deficient in these instances. Other prosecutorial arguments cited by Griffin were in response to the defendant's presentation of various mitigating circumstances in his background and childhood. The prosecutor argued that Griffin should not be viewed as a "victim" of his environment and upbringing and should be held accountable for his actions. We conclude that the prosecutor's argument regarding mitigation in the instant case did not rise to the level of comments that we have ruled egregious and prejudicial. See, e.g., Garron v. State, 528 So.2d 353, 358-59 (Fla.1988) (telling jurors that death is required when aggravators outnumber mitigators; telling jurors to imagine the victim's anguish; telling jurors to listen to victim's screams for punishment of her killer; telling jurors that they have a sworn duty to recommend death); Teffeteller v. State, 439 So.2d 840, 844-45 (Fla. 1983) (repeatedly urging the jury to recommend the death penalty so that defendant would not be paroled in twenty-five years and kill again).
*16 "The proper exercise of closing argument is to review the evidence and to explicate those inferences which may reasonably be drawn from the evidence." Bertolotti v. State, 476 So.2d 130, 134 (Fla. 1985). Merely arguing a conclusion that can be drawn from the evidence is permissible fair comment. Mann v. State, 603 So.2d 1141, 1143 (Fla.1992) (rejecting claim that prosecutor's closing argument turned defendant's pedophilia into improper nonstatutory aggravator and denigrated psychologist's opinion that statutory mental health mitigators applied). Based on the transcript of the prosecutor's closing argument, we conclude that Griffin could not satisfy the Strickland prejudice prong and thus could not prevail on his claim of ineffective assistance in regard to prosecutorial argument. See Strickland, 466 U.S. at 697, 104 S.Ct. 2052 ("[T]here is no reason for a court deciding an ineffective assistance claim ... to address both components of the inquiry if the defendant makes an insufficient showing on one."); see also Kennedy v. State, 547 So.2d at 914 (explaining that court need not determine whether counsel's performance was deficient where defendant fails to establish prejudice prong). Thus, we affirm the circuit court's summary denial of relief on this claim.

Suppression of Statements
Griffin argues that trial counsel rendered ineffective assistance in failing to move for the suppression of Griffin's statements to the police. The circuit court summarily denied this claim as being procedurally barred. The direct appeal record reveals that trial counsel actually filed a motion to suppress Griffin's confession. At the hearing on the motion to suppress, trial counsel argued that the confession was not voluntary because Griffin had been beaten by the police and was injured at the time his statement was taken. Counsel also presented evidence of Griffin's injuries and physical condition at the time he gave the statement. After considering all of the evidence presented at the hearing, the trial court denied Griffin's motion to suppress. However, the State subsequently chose not to introduce the confession at trial. On direct appeal, appellate counsel raised as error the trial court's failure to suppress Griffin's statement. This Court found the claim to be without merit. Griffin v. State, 639 So.2d at 972 n. 4.
Issues which are litigated at trial and upon direct appeal are not cognizable through collateral attack. Smith v. State, 445 So.2d 323, 325 (Fla.1983). Furthermore, trial counsel's performance cannot be deemed deficient when he raised this very issue at trial. Allegations of ineffective assistance of counsel cannot be used to circumvent the rule that postconviction proceedings cannot serve as a second appeal. See Medina v. State, 573 So.2d 293, 295 (Fla.1990) ("Proceedings under rule 3.850 are not to be used as a second appeal."). Thus, we affirm the circuit court's summary denial of relief on this claim.

Avoid Arrest Aggravator
Griffin raises several issues relating to the avoid arrest aggravating circumstance. He asserts that where the decedent is a police officer, as in his case, the factor results in an automatic aggravator and impermissible doubling. Griffin also argues that counsel was ineffective for failing to challenge the aggravator and the jury instruction on it. This Court has upheld the constitutionality of the standard jury instruction for the avoid arrest aggravator. See, e.g., Sweet v. Moore, 822 So.2d at 1274-75; Whitton v. State, 649 So.2d 861, 867 n. 10 (Fla.1994) (concluding that standard jury instruction for avoid arrest *17 aggravator was not vague and did not require a limiting instruction in order to make the aggravator constitutionally sound). Where the victim is not a law enforcement officer, the proof of the requisite intent to avoid arrest must be strong. Robinson v. State, 610 So.2d 1288, 1291 (Fla.1992); Riley v. State, 366 So.2d 19, 22 (Fla.1978) ("[T]he mere fact of a death is not enough to invoke this factor when the victim is not a law enforcement official. Proof of the requisite intent to avoid arrest and detection must be very strong in these cases."). However, in those cases where the victim was a law enforcement officer who was murdered while engaged in the performance of official duties, such as the instant case, this Court has found the aggravator applicable without any discussion of the adequacy of the evidence. See, e.g., Burns v. State, 699 So.2d 646 (Fla.1997) (finding avoid arrest aggravating circumstance properly found for murder of a law enforcement officer that occurred while defendant was engaged in trafficking in cocaine); Armstrong v. State, 642 So.2d 730 (Fla.1994) (finding same as to murder of police officer responding to a robbery in progress at a restaurant); Reaves v. State, 639 So.2d 1 (Fla.1994) (finding same as to the murder of a deputy sheriff who was responding to 911 call outside convenience store). Furthermore, as long as the avoid arrest and murder of a law enforcement officer are merged into one factor there is no doubling problem. See Burns. The sentencing order indicates that the court properly merged these factors in Griffin's case.
Thus, any failure of Griffin's trial counsel to challenge either the avoid arrest aggravating factor or the jury instruction on this aggravator was not deficient performance. We conclude that the circuit court's summary denial of relief on this issue was proper.

Constitutionality of Death Penalty Statute
Griffin argues that Florida's capital sentencing scheme is unconstitutional on its face and as applied to him and that trial counsel was ineffective for failing to object on this basis. This Court has repeatedly rejected constitutional challenges to Florida's capital sentencing scheme. See Floyd v. State, 808 So.2d 175, 193 (Fla.2002); Fotopoulos v. State, 608 So.2d 784, 794 & n. 7 (Fla.1992) (rejecting a series of constitutional challenges to Florida's death penalty statute). Additionally, this Court has repeatedly rejected claims that electrocution is unconstitutional. See, e.g., Provenzano v. Moore, 744 So.2d 413, 415 (Fla. 1999); Jones v. State, 701 So.2d 76, 79 (Fla.1997); Medina v. State, 690 So.2d 1241, 1244 (Fla.1997). We have also rejected claims that lethal injection is unconstitutional and that the application of the amended statute violates the Ex Post Facto Clause. See Bryan v. State, 753 So.2d 1244, 1253 (Fla.2000) (stating that lethal injection is "generally viewed as a more humane method of execution"); Sims v. State, 754 So.2d 657, 664 (Fla.2000) (finding no ex post facto violation). Thus, even had counsel objected to the imposition of Griffin's death sentence on these grounds, he would not have prevailed. Counsel cannot be deemed ineffective for failing to make these meritless arguments. See Melendez v. State, 612 So.2d 1366, 1369 (Fla. 1992). Thus, we affirm the circuit court's summary denial of relief on this claim.
Griffin also includes an assertion that he is innocent of and ineligible for the death penalty. In order to prevail on such a claim, a defendant "would have to show constitutional error invalidating all of the aggravating circumstances upon which the sentence was based." In re Medina, 109 F.3d 1556, 1566 (11th Cir.1997). In Griffin's case, the trial court found four aggravating *18 circumstances: CCP, previous conviction of a violent felony (based on the attempted murder of Officer Crespo), that the murder was committed during the course of a burglary, and that the murder was committed to avoid arrest. Griffin has not shown constitutional error that would invalidate all of these aggravating circumstances. Thus, summary denial of relief was proper.
As a separate issue, Griffin argues that the trial court's sentencing order failed to consider and weigh unrefuted mitigating evidence presented at trial. This claim is procedurally barred because it could have and should have been raised on direct appeal. Valle v. State, 705 So.2d at 1335; Harvey v. Dugger, 656 So.2d at 1256 ("[I]ssues that could have been, but were not, raised on direct appeal are not cognizable through collateral attack."). Furthermore, Griffin's postconviction motion was facially insufficient as it did not state what "unrefuted" mitigating factors the trial court failed to consider. Thus, summary denial of relief was proper on this claim. Ragsdale, 720 So.2d at 207.

CCRC FUNDING AND PUBLIC RECORDS
Griffin also alleges that postconviction counsel was unable to properly investigate and prepare Griffin's postconviction motion due to the workload and funding of the Capital Collateral Regional Counsel (CCRC) and outstanding public records requests. Griffin was originally represented by counsel from CCRC-South. In March 1997, CCRC counsel filed an incomplete postconviction motion in order to toll the time limit in which Griffin had to file his federal habeas corpus petition. Pursuant to an order from this Court, the time period in which Griffin was required to file his postconviction motion in the circuit court was tolled until October 1, 1998. Amendments to Fla. R.Crim. P.-Capital Postconviction Public Records Production (Time Tolling), 719 So.2d 869, 871-72 (Fla. 1998) (tolling time requirements of rules 3.851 and 3.852 in order to accommodate new legislation setting up repository for capital postconviction public records and in order to establish registry of private counsel for appointment and implement new rule 3.852 consistent with this legislation). CCRC counsel filed an amended postconviction motion on Griffin's behalf in October 1998. In response to CCRC's notice that Griffin was in need of counsel for postconviction relief, the circuit court appointed Kenneth Malnik as Griffin's collateral counsel in August 1999. Malnik requested and received several extensions for filing an amended postconviction motion. The amended motion, which is the subject of this appeal, was filed by Malnik in December 1999. Thus, we agree with the circuit court's conclusion that relief is "unwarranted" on this claim as any funding and workload problems have been adequately addressed and rectified.
As to Griffin's claim that his postconviction representation has been hampered by outstanding public records requests, the record does not support this claim. In his motion below, Griffin argued that he needed files from the lead detective and the two detectives who had interrogated his codefendants, in order to support his claims that the codefendants had been coerced into talking to the detectives and that their statements were not accurate. The circuit court summarily denied this claim, finding Griffin's request for relief "baseless." On appeal, Griffin argues that the trial court erred in not ordering disclosure of requested Metro-Dade police records[9] and in not giving Griffin an opportunity *19 to amend his motion following disclosure of the records.
The record in this appeal contains three volumes of supplemental record, encompassing over 600 pages, relating to Griffin's public records requests. These include numerous requests for extensive records by Griffin and numerous responses from the various agencies and offices. The responses indicate that some records have been supplied, other records have been withheld as either exempt or privileged, some requests could not be fulfilled because the documents did not exist, and other requests were so broad and vague that the offices could not comply. It is difficult to determine what records Griffin has actually received and what, if any, requests are still outstanding. However, even if Griffin has outstanding requests that would reveal information about coercion of his codefendants, this could not be considered newly discovered evidence for purposes of a collateral attack. The record of the suppression hearing before trial is replete with allegations that the police beat and intimidated the codefendants and that their statements should be suppressed on this basis. However, the trial court ruled that the codefendants' statements were voluntary and need not be suppressed. At trial, codefendant Nicholas Tarallo even testified that he was beaten by the police when arrested, but he also testified that his statements about the incident were true in spite of any police coercion. On appeal, this Court found no merit to Griffin's claim that his statements to the police should have been suppressed. Griffin v. State, 639 So.2d at 972 n. 4. Thus, to the extent that the public records claim goes to the voluntariness of the codefendants' statements to the police, this argument has already been made and rejected and is procedurally barred in this postconviction proceeding.
Griffin also argues that public records relating to Officer Crespo could support his claim that the police fired first and he only fired in response. However, evidence was presented at trial that Officer Crespo fired two shots into the patrol car door. Any further evidence relating to these shots that might be revealed by public records would not contradict the trial testimony of Officer Crespo and codefendant Tarallo that Griffin fired first. Thus, we affirm the circuit court's summary denial of relief as to this claim.

ABSENCE OF DEFENDANT
Griffin contends that he was denied a fair trial based on his "constructive" absence during critical stages of his trial. A defendant has a "constitutional right to be present at the stages of his trial where fundamental fairness might be thwarted by his absence." Francis v. State, 413 So.2d 1175, 1177 (Fla.1982), receded from on other grounds by Muhammad v. State, 782 So.2d 343, 352 n. 4 (Fla.2001). Florida Rule of Criminal Procedure 3.180(a) provides, in pertinent part, that a defendant shall be present at any pretrial conferences, unless he waives his presence in writing; during the examination, challenging, impaneling, and swearing of the jury; and at all proceedings before the court when the jury is present.
In Coney v. State, 653 So.2d 1009, 1012 (Fla.1995), this Court explained that it is error for the defendant not to be present during a pretrial meeting between the lawyers and the judge. However, we concluded that the error was harmless in Coney's *20 case because the meeting was a routine status conference prompted by a delayed trial date, where several technical, procedural, and legal issues were discussed, and that the defendant's presence would not have assisted the defense in any way. Id. at 1012-13. Coney also involved the defendant's absence from the immediate site of a bench conference where pretrial juror challenges were exercised, even though the defendant was present in the courtroom. This Court clarified that "presence" means being physically present at the immediate site where pretrial juror challenges are exercised. Id. at 1013.[10] However, we also ruled that this clarification was prospective only in application and that in Coney's case any error was harmless as the conferences "involved a legal issue toward which [Coney] would have had no basis for input." 653 So.2d at 1013. Subsequently, we further explained that the Coney rule regarding physical presence did not apply retroactively to a trial that took place before our opinion in Coney was released. Boyett v. State, 688 So.2d 308, 309 (Fla.1996); see also Muhammad v. State, 782 So.2d at 353 n. 6 (explaining that Coney applied to limited window of cases in which jury was sworn in after Coney became final on April 27, 1995, and before amendment to Florida Rule of Criminal Procedure 3.180(b) became effective on January 1, 1997). Because Griffin's trial took place in 1991, the Coney definition of "presence" was not applicable.
However, we conclude that Griffin has not stated a cognizable claim under any definition of "presence" encompassed by rule 3.180. He does not assert that he was physically absent during critical stages of his trial, but instead argues that the physical arrangement of the courtroom, the courtroom acoustics, and the use of dual juries for his trial and that of his codefendant "effectively" absented him from critical stages of his trial. Griffin does not elaborate on this claim by explaining what he means by the physical arrangement of the courtroom or how the courtroom acoustics limited his participation in the trial. Thus, we affirm the circuit court's summary denial of relief on this claim.

JURY INTERVIEW
Griffin also argues that the Florida Bar rule which prohibits jury interviews is unconstitutional. Rule 4-3.5(d)(4) of the Rules Regulating the Florida Bar prohibits a lawyer from initiating communication with any juror regarding a trial with which the lawyer is connected, except to determine whether the verdict may be subject to legal challenge. The rule provides that the lawyer "may not interview the jurors for this purpose unless the lawyer has reason to believe that grounds for such challenge may exist." R. Regulating Fla. Bar 4-3.5(d)(4). Before conducting such an interview, the lawyer must file a notice of intent to interview, setting forth the name of the juror to be interviewed. The lawyer must also deliver copies of the notice to the trial judge and opposing counsel a reasonable time before the interview.
Griffin alleges that his verdict may be subject to legal challenge based on the lack of African-American jurors on his jury panel and the jury's findings as to mitigation. However, any claim regarding improper racial strikes of potential jurors *21 should have been raised on direct appeal and would require a specific showing as explained in Melbourne v. State, 679 So.2d 759 (Fla.1996). Further, this Court has cautioned "against permitting jury interviews to support post-conviction relief" for allegations which focus upon jury deliberations. Johnson v. State, 593 So.2d 206, 210 (Fla.1992) (stating that "it is a well settled rule that a verdict cannot be subsequently impeached by conduct which inheres in the verdict and relates to the jury's deliberations"). Thus, counsel could not inquire into the jury's deliberations as to the mitigating factors applicable in Griffin's case.
In Arbelaez v. State, 775 So.2d 909 (Fla. 2000), we found a similar claim procedurally barred because it was not raised on direct appeal. Similar to the defendant in Arbelaez, Griffin "appears to be complaining about a defendant's inability to conduct `fishing expedition' interviews with the jurors after a guilty verdict is returned. Thus, even if the claim were not procedurally barred, [the defendant] would not be entitled to relief on the grounds he asserted and no evidentiary hearing was required on this claim." Id. at 920. Accordingly, we affirm the circuit court's summary denial of relief.

INEFFECTIVE ASSISTANCE OF APPELLATE COUNSEL
Griffin asserts that appellate counsel rendered ineffective assistance on direct appeal based upon an inadequate record on appeal. However, claims of ineffective assistance of appellate counsel are not cognizable in postconviction motions, and should be raised in a habeas petition. Thus, the circuit court's summary denial of this claim was proper. See also Thompson v. State, 759 So.2d at 660; Torres-Arboleda v. Dugger, 636 So.2d 1321, 1323-24 (Fla.1994) (finding claim that charge conferences should have been transcribed was procedurally barred in postconviction motion).
Moreover, this Court has previously rejected a similar claim of ineffective assistance of appellate counsel based on failure to have various portions of the trial record transcribed, even though the claim was properly presented in a habeas petition. In Ferguson v. Singletary, 632 So.2d 53, 58 (Fla.1993), we reasoned that "[h]ad appellate counsel asserted error which went uncorrected because of the missing record, or had [the defendant] pointed to errors in this petition, this claim may have had merit." However, because the defendant "point[ed] to no specific error which occurred" during the time periods which were not transcribed, we rejected the claim that appellate counsel was ineffective. Id. Cf. Turner v. Dugger, 614 So.2d 1075, 1079-80 (Fla.1992) (finding defendant had not been prejudiced on appeal by failure of trial counsel to have bench conferences transcribed). As with the defendant in Ferguson, Griffin has not pointed to any errors that occurred during the portions of the proceedings that were not transcribed. Thus, even if the claim were properly before this Court in a habeas petition, Griffin would not be entitled to relief.

INSANE TO BE EXECUTED
Griffin asserts that he is insane to be executed. Florida Rule of Criminal Procedure 3.811(a) provides that "[a] person under sentence of death shall not be executed while insane to be executed." Section 922.07(1), Florida Statutes (2002), also provides that the Governor shall stay the execution when he is informed that the person under a death sentence may be insane. Both the rule and the statute address the circumstances where execution has been scheduled. While Griffin is under a death sentence, no death warrant *22 has been signed and his execution is not imminent. Thus, the issue of Griffin's sanity for execution is not ripe and the circuit court properly denied relief on this claim. Cf. Provenzano v. State, 751 So.2d 37, 41 (Fla.1999) (Harding, C.J., concurring) (stating that history of incompetence has no relevance regarding whether defendant "is incompetent to be executed at the present time").

ADMISSION OF PHOTOGRAPHS
Griffin argues that the trial court erred in admitting autopsy photographs of the victim during the guilt phase of the trial. The admission of these autopsy photographs should have been raised on direct appeal and thus is procedurally barred in postconviction proceedings. See Valle v. State, 705 So.2d at 1335; Harvey v. Dugger, 656 So.2d at 1256 ("[I]ssues that could have been, but were not, raised on direct appeal are not cognizable through collateral attack."). Accordingly, we affirm the summary denial of relief on this claim.
Furthermore, even if this claim were not procedurally barred, it is meritless. "During the guilt phase [of a trial], this Court has `upheld the admission of photographs to explain a medical examiner's testimony, to show the manner of death, the location of wounds, and the identity of the victim.'" Philmore v. State, 820 So.2d 919, 931 (Fla.) (quoting Larkins v. State, 655 So.2d 95, 98 (Fla. 1995)) (citing cases where admission of autopsy photographs was found proper), cert. denied, 537 U.S. 895, 123 S.Ct. 179, 154 L.Ed.2d 162 (2002). In the instant case, two photos of the victim officer were admitted at the trial: one was used for the legal identification of the victim and both were used by the medical examiner to explain the nature of the victim's wounds and his cause of death. Thus, the admission of the photographs during the guilt phase of Griffin's trial served the purposes which this Court has found proper.

CUMULATIVE ERROR
Finally, Griffin argues that he was denied a fair trial based upon cumulative errors committed by trial counsel, the prosecutor, and the judge. However, where individual claims of error alleged are either procedurally barred or without merit, the claim of cumulative error must fail. See Downs v. State, 740 So.2d at 509 n. 5. As discussed in the analysis of the individual issues above, the alleged errors are either meritless, procedurally barred, or do not meet the Strickland standard for ineffective assistance of counsel. Because the alleged individual errors are without merit, the contention of cumulative error is similarly without merit, and Griffin is not entitled to relief on this claim.

CONCLUSION
For the reasons discussed above, we affirm the circuit court's denial of postconviction relief.
It is so ordered.
ANSTEAD, C.J., WELLS, PARIENTE, LEWIS, QUINCE, and CANTERO, JJ., and SHAW, Senior Justice, concur.
In light of the revised opinion, the Appellant's Motion for Rehearing is hereby denied.
ANSTEAD, C.J., and WELLS, PARIENTE, LEWIS, QUINCE, and CANTERO, JJ., concur.
NOTES
[1] Griffin raised a number of violations of Williams v. State, 110 So.2d 654 (Fla. 1959), and argued that the trial court erred in denying his motion to suppress certain statements he had made to the police.
[2] Griffin argued that the trial court erred in restricting the introduction of nonstatutory mitigating evidence of his remorse, in finding that the murder was committed while he was engaged in the commission of a burglary, in finding that the CCP aggravating circumstance was applicable, and in denying his motion to impanel a new jury for sentencing.
[3] Huff v. State, 622 So.2d 982 (Fla.1993).
[4] Griffin claims that the trial court should have conducted an evidentiary hearing on claims 4-13 and 18, 19, and 21.
[5] On appeal, Griffin alleges a new basis for his claim of judicial bias. He contends that the trial judge was a friend of the victim's father and that defense counsel was aware of this fact. However, this new claim is not properly before this Court. See Doyle v. State, 526 So.2d 909, 911 (Fla.1988) (finding that postconviction claim raised for the first time on appeal was procedurally barred). Thus, we only consider the two grounds for recusal that Griffin raised in the circuit court.
[6] The trial judge explained that if it proved necessary a jury would be selected in a different community, brought to Dade County, and sequestered during the trial.
[7] The trial court's instruction on the penalty phase voting was not raised in Griffin's postconviction motion below. Thus, this claim is not properly before this Court. Doyle v. State, 526 So.2d 909, 911 (Fla.1988) (finding that postconviction claim raised for the first time on appeal was procedurally barred).
[8] See Jackson v. State, 648 So.2d 85, 87-89 (Fla.1994).
[9] Griffin's records requests characterized the documents as "interdepartmental records of possible police misconduct" and "records of Officer Crespo" concerning the two gunshot holes in the interior of the squad car which could be "exculpatory and tend to impeach Crespo's trial testimony."
[10] The Coney definition of presence was superseded by an amendment to rule 3.180(b). See Amendments to the Fla. Rules of Crim. Pro., 685 So.2d 1253, 1254 n. 2 (Fla.1996) (amending rule to provide that "[a] defendant is present for purposes of this rule if the defendant is physically in attendance for the courtroom proceeding, and has a meaningful opportunity to be heard through counsel on the issues being discussed").